## Noyes *vs.* Stillman and another.

Where, in an action on the case for flowing back water, the declaration alleged, that the plaintiff was "lawfully possessed" of the land in question, and that "said land had been overflowèd, and drowned, whereby the grass growing thereon had been spoiled, and said land made worse, and miry, and almost impassable;" it was held, 1. That the gist of the action was an injury to the possession, and that there could be no recovery for any injury to the reversion.

2. That if the plaintiff intended to recover on the ground of her reversionary right as distinct from the possession, the declaration should have been adapted to such recovery.

Where, in such action, it was proved, that the plaintiff, during the time for which she claimed to recover, had, by parol agreements, from year to year, rented said land for a pasture to different individuals, and the defendant thereupon requested the court to instruct the jury, that the plaintiff had thereby been wholly out of possession during said time, and could not maintain said action, but the court refused to comply with the request; it was held, that such course was correct.

Where the court, in such action, after instructing the jury that the plaintiff could not recover for any usufructuary right in the tenants, further instructed them, that as the rest and residue of the title was in the plaintiff, she might recover for an injury to that, notwithstanding such tenancy, if all the other allegations in the declaration were proved ; it was held, that as such charge was calculated to mislead the jury, a new trial ought to be granted, for a misdirection.

The purchaser of a dam may lawfully use it, as it was when purchased, and had been customarily used by his grantor, until he is notified that such use is an encroachment upon the rights of others.

In an action on the case against the purchaser of a dam with flash-boards upon it, for flowing back water upon the plaintiff's land, it is for the jury to determine, whether such flash-boards are, or are not, a part of said dam.

Therefore, where in such action, the plaintiff claimed that such flash-boards were put upon the dam, and removed from time to time, by the water or ice, or by the defendants, in order to save them, and that the defendants were liable for such renewing and replacing them, unless they had acquired the right thus to renew them, and the court instructed the jury, that if the defendants had no right to keep the dam, with flash-boards, as high as it was when the acts complained of were committed, and if said flash-boards caused the injury complained of, the defendants were liable for their acts, without previous notice to remove them ; it was held, that such instruction was erroneous.

THIS was an action on the case, brought to the term of the superior court for the county of New London, holden in March, 1855.

The declaration alleged, substantially, that "on or about the first day of April, 1847, the plaintiff was, and many years before, and ever since, has been lawfully possessed of a certain tract of meadow-land situated in Stonington, bounded, &c., containing about five acres of land, which the defendants well knew, but contriving and intending to injure the plaintiff, and deprive her of the benefit of said meadow-land, on or about the second day of April, 1847, erected a dam, in and across said Pawcatuck river, below the said land of the plaintiff, and caused the water of said river to flow back upon, and overflow, and drown, the said meadow-land of the plaintiff, and have ever since maintained and continued said dam across said river, whereby the grass of the plaintiff, growing on said land, has been spoiled within the time aforesaid, and said meadow-land has been made worse, has become miry and almost impassable, to her damage, &c."

Upon the trial to the jury, it was proved that during the time when the acts, complained of in the plaintiff's declaration, were claimed to have been committed, the plaintiff was, and long before had been, the owner in fee, of the land flowed, as set forth.

It was also proved, that at least for the three years next before the date and service of the plaintiff's writ, and she claimed to recover only for said three years, the plaintiff had, by parol agreements from year to year, rented her said lot for a pasture, to different individuals, who pastured the same under said agreements. Whereupon the defendants claimed, as a matter of law, that the plaintiff had thereby been wholly out of possession, during said three years, and that the action being, as they claimed, for an injury to the possessory right, the plaintiff could not sue, but the tenant must sue, if anybody. And the defendants asked the court so to instruct the jury.

The court did not comply with the request, but instructed them, that the plaintiff, as owner in fee, or as landlord, could not recover for an injury to the usufructuary right in the ten-

ants, yet the rest of the title and interest is in her, and for an injury to that, she can recover, and hence she can recover in this case, and in this form of action, if all the other allegations in the declaration are true, notwithstanding said tenancy, but otherwise she can not.

The defendants claimed no right to flow said land, by means of said dam, except that they insisted, that they, and those under whom they held, had used and enjoyed said dam exclusively, and adversely, for more than fifteen years before the plaintiff's action was brought; and the defendants insisted, that when they purchased said water privilege, the dam was substantially the same, and of as great height, as it was during the three years complained of by the plaintiff; the defendants, however, admitted, and it was proved, that they and their grantors, had put and kept on said dam, flash-boards of about — inches in height, at the west end, and thence gradually growing less, so that at the east end, they were of little or no height.

This increased elevation of the dam, the defendants claimed, was only bringing it up to a level, but the plaintiff denied this, and insisted that these flash-boards were put on illegally.

The defendants insisted that they bought the dam, already built with flash-boards of equal height, and had never, before this suit, had notice that said dam and flash-boards were too high, or so raised without right in their grantors, and that until such notice, they could not be sued, even if it was true, that their grantors had no such right.

The plaintiff admitted the law to be so, that until notice, one who purchases a dam, and only continues to use it as it is, is not liable for the nuisance, but as it was proved and admitted, that these flash-boards were put on the dam from time to time, every year, and renewed as often as they were carried off by water, or ice, or flood-wood, or removed by the defendants themselves, as they were, in order to save them, the defendants were liable for such replacing and renewing,

unless the defendants had acquired a right so to do. The defendants insisted that although they had, from time to time, and every year, renewed said flash-boards, yet the new ones were of no greater height than the old ones, and until they had notice that they were too high, the defendants were not liable, even if they strictly had no right, and they asked the court to instruct the jury to that effect.

The court did not so instruct them, but did instruct them, that if the defendants had no right to keep the dam with flash-boards, as high as it was kept with them, when the acts were done for which this action was brought, and said flash-boards so renewed by the defendants from year to year, caused the injury sued for, the defendants were liable for their own positive acts, without previous notice, since they were not justified by the like positive, but unlawful acts of their grantors.

The court instructed the jury, that fifteen years adverse enjoyment of a dam of a given height and capacity, or a water-privilege of a given extent, would give a complete right and title, so to continue to enjoy.

The jury, having returned a verdict for the plaintiff, the defendants moved for a new trial.

*Foster* and *Dixon*, in support of the motion.

1. The acts charged by the plaintiff on the defendants as having been done, and all the acts charged as so done, are acts injurious to the possession, and only to the possession of the land.

2. During all the period for which a recovery is sought, the premises were in possession of a tenant to whom they had been let. As matter of law, the plaintiff therefore could not recover, and the jury should have been so instructed.

This doctrine of the charge can not be supported, but is contrary both to principle and authority.

On principle, an action for an injury to a reversionary interest in land, differs as really from an action to recover

damages for an injury to the possession, as though the one action was founded in tort, and the other in contract.

This action then, having been brought for an injury to the possession, can not be maintained; the plaintiff sets up no title whatever, and alleges nothing in herself but the lawful possession; proving an interest in the reversion, and an injury to that reversion under such circumstances, avails nothing.

On authority; all our form books contain forms for actions for an injury to the reversionary interest.

The plaintiff's right as reversioner, is in all cases set out. *Jesser* v. *Gifford*, 4 Bur., 2141. *Queen's College* v. *Hallett*, 14 East, 489. *Leader* v. *Moxton, et al.*, 3 Wils., 461. *Baxter* v. *Taylor*, 4 B. & A., 72. *Tucker* v. *Newman*, 11 Ad. & El., 40. *Randall* v. *Cleaveland*, 6 Conn. R., 328.

It results, then, that the jury were misdirected, and that there should be a new trial for such misdirection.

3. It appears, from the record, that the defendants purchased their mill privilege, with the dam already erected, and that the flash-boards, used upon it, were used after the purchase, as they were before; that when carried away or removed, they were replaced in the same manner, and to no greater height, after, than before the purchase.

The instructions of the court, on this point, were inconsistent with the admission, that the law allows one who purchases a dam, to use it as it is, without liability to an action, until notice to remove it. The principle, decided in Penruddock's case, 5 Rep., 101, controls this case.

The right to use, enjoy and maintain, to keep a piece of property as it is, carries with it, manifestly, the right to repair. If the roof of Penruddock's house became leaky, could he not stop those leaks without subjecting himself to a *quod permittat ?*

In the present case, restoring the flash-boards that were casually carried away, or that were struck, as it is called, by the defendants themselves, to save them in a freshet, is

clearly within the principle; it is but keeping the dam as it was when it came into their possession, which it is agreed they had the right to do.

*M' Curdy* and *Pomeroy*, contra.

I. The granting of a particular interest in and use of the plaintiff's land, for a pasture, did not, as a matter of law, put her wholly out of the possession for three years. For every other purpose, the right and the fact of possession, might have remained, and did remain with her. 4 Mass. R., 266. 1 Sw. Dig., 522. 19 Verm., 517. 19 Conn. R., 188. *Russell* v. *Scott*, 9 Cow., 279.

2. From the nature and purpose of the letting, it was limited to the season of pasturing.

3. If the letting was nominally for the year, yet as the occupants were changed annually, there must have been an interval in which the possession reverted to her, so as to enable her to re-let; and upon resuming possession, she could sue for the intermediate damages. 1 Sw. Dig., 521. 1 Chit. Pl., 177. 11 Mass. R., 519. 19 Verm., 517.

4. If the injury was such as would reduce the rent, that would be sufficient. *Sumner* v. *Tileston et al.,* 7 Pick., 198.

5. The question of possession was not one of law, but of fact; as such, it was left to the jury, and they found that the plaintiff had a possession, which had been disturbed. 17 Conn. R., 402. A. K. Marshall, 515.

II. The defendants having put on the flash-boards wrongfully, themselves, and so themselves committed the trespass, the fact that their grantors had been guilty of a like wrong, does not make it necessary to request a removal. 17 Conn. R., 402. 3 Harris & McHenry, 441. U. S. D., 1850. 323. No. 15.

HINMAN, J. The plaintiff, in her declaration, seeks to recover for an injury to land, of which she claims to have been for several years lawfully possessed. The injury is

claimed to have been caused by the defendants' dam, setting back the waters of Pawcatuck river, so as to overflow the land. She alleges no title in herself, except such as is to be inferred from her lawful possession, and no permanent injury, except such as may be inferred from the allegation that the land has been overflowed and drowned, by means of which the grass growing there has been spoiled, and the land made worse. We think, therefore, with the counsel for the defendants, that the gist of the action is the injury to the plaintiff's possession of the land; and consequently, if she fails to show that she had the possession, she must fail in her action. It is true, undoubtedly, that overflowing and drowning land, and making it worse, may be an injury to the reversion as well as to the possession. It may destroy some valuable quality in the soil, or it may permanently injure or destroy wood and timber growing upon it, and if so, it would obviously be injurious to the reversion. But if the plaintiff intended to recover, on the ground of her reversionary right, as distinct from and disconnected with the lawful possession which she alleges, she should have added a count to her declaration adapted to a recovery for such an injury. Counts of this description are to be found in the books of forms, and the principle which will support such an action, is sufficiently recognized in the case of *Randall* v. *Cleaveland*, 6 Conn. R., 328, and the authorities there referred to.

The plaintiff proved, on the trial, that she owned the land in fee. This tended to prove her possession, because an owner is presumed to be in possession where nothing to the contrary is shown, and was therefore proper evidence in her favor : and, assuming that she had the possession as well as title in fee, she would have been entitled to recover full damages, as well for any permanent injury to the freehold, as for a temporary injury to the possession. But if the essential ground or object of the action, in other words, the gist of the action fails to be proved, there can be no recovery whatever. This, though not always the principal cause of the plaintiff's

complaint in point of fact, is, nevertheless, absolutely essential in point of law, as it is the main point on which the action rests. In this case, we have said, this main point on which the action rests is the plaintiff's possession of the land. She has not declared for any injury to her reversionary right, and she can not therefore recover for any injury to that, unless by way of an increase, or addition to the damages, which she is proved to have suffered in consequence of being disturbed in the enjoyment of her possessory right.

These principles are familiar, and if not expressly and fully recognized by the court, in its charge to the jury, were not in any sense denied, and the jury were explicitly told, that the plaintiff could not recover for an injury to the usufructuary right in the tenants. If the charge had stopped here, it would have been correct; and the court was under no obligation to go further, because the claim that was made by the defendants, being one that can not be sustained in point of law, the court might have disregarded it altogether. This course, however, was not taken, and in the residue of this part of the charge, we are inclined to think the jury may have been misled. The charge, though not incorrect when properly understood and applied, yet, under the circumstances, as they appeared on the trial, and in reference to the claims made, was rather calculated to mislead, and on that ground it appears to us a new trial ought to be granted.

The motion states that it was proved, and not denied, that for at least three years next before the date, and service of the plaintiff's writ, (and she claimed to recover only for said three years,) the plaintiff had, by parol agreements from year to year, rented her said lot for a pasture to different individuals, who pastured the same under said agreements, whereupon the defendants claimed, as matter of law, that the plaintiff had thereby been wholly out of possession during said three years; and that the action being, as they claimed, for an injury to the possessory right, the plaintiff could not

sue, but the tenants must sue, if anybody; and the defendants asked the court so to instruct the jury.

This request was, in substance, asking for a nonsuit, because it asked the court to decide, from the admitted fact, that during the three years for which the plaintiff claimed to recover, the land had been rented from year to year to different persons for a pasture, that she thereby was wholly dispossessed, whereas it appears to us that such a letting might be consistent with her retention of the premises during the whole of this period for every purpose, not inconsistent with the rights of the tenants to depasture there. The court, therefore, as we have intimated, was correct in refusing to sanction this claim, and might have disregarded it entirely. If wood, timber or fruit grew upon the land, the tenants, whose rights were confined to the right of pasturage, would have had no interest in them, and consequently they would belong to the plaintiff, and ordinarily she would retain possession, so far as it was necessary for her, in order to enjoy these productions. And so of anything else of value which the land might contain or produce, which did not come within the right of pasturage. In short, anything there might be upon the land, except the grass growing there, and which was not necessary or convenient to the enjoyment of the premises as a pasture, would belong to the general owner of the soil; and so far as it could be taken without injury to the pasture, might be; and the plaintiff, for the purpose of taking it, must have had a qualified possession of the premises, even admitting that the renting of lands, by parol, for a pasture, necessarily means that the tenant is to have the possession at that season of the year when, ordinarily, there can be no use of them for such a purpose. It appears to us, therefore, that whether, by the renting of land for such a purpose, by parol, the landlord would be divested entirely of his possession, so as to prevent his suing for an injury to his possessory right, must depend upon the understanding and agreement of the parties, to be gathered from what was said

at the time of letting, from the situation and condition of the land itself, as whether it was capable of any other use consistent with the right of the tenant; and, if to some extent, such other use would be injurious to the tenant, whether the injury would be appreciable, or trifling, or serious, in comparison with the value of the pasture; and we suppose that even professional men, who are not farmers, may be allowed to know, as a fact, that most pastures in Connecticut are capable of being used, and are extensively used, for many other purposes. The meaning of such a renting might also be controlled by the custom of the country, if there was any on the subject.

In view of considerations of this character, the court, after informing the jury that the plaintiff could not recover for an injury to the usufructuary right in the tenants, further instructed them, that " as the rest of the title and interest was in the plaintiff, she might recover for an injury to that; and hence she might recover in this case, if all the other allegations in the declaration were true, notwithstanding said tenancy. By the expression, " the rest of the title and interest," was meant, undoubtedly, such possessory right as remained in the plaintiff, during the time the pasture had been rented to tenants. But although, as we have seen, it is very probable that there might have been such a right, yet we do not find that there was any evidence, before the jury, that would authorize them to find it, or that any evidence was offered for the purpose of proving it, or that the plaintiff relied upon anything, as a ground of recovery, except merely her title to the land. Besides, the word rented, aside from the qualification of it by the words with which it stands connected, naturally means that the tenant, to whom the property is rented, has the exclusive possession for the time. " Rented for a pasture," seems rather an equivocal phrase, which may be open to explanation, though it rather conveys the idea that the tenant has an exclusive right, at least during the proper season for pasturing. If the same was used in con-

nection with a building ; as if it be said a building is rented for a dwelling-house, or store, or shop, it implies that the exclusive right of possession is in the tenant; and if this is not so as applied to a pasture, it is because the right of pasture is in its nature transient and less permanent, and more analogous to the. incorporeal right of way, than the right which one has to the house in which he resides. Still we do not think that the expression can be said ·to imply that any other than the tenant has any right in the thing rented, during the time of the tenancy ; and whether it would, or not, convey that idea, would, as we have said, depend upon other circumstances.

If we are correct in this, it is apparent that if this land was so situated that it could be used for nothing but a pasture, or if the agreement was that the tenants were to have the exclusive possession during the three years for which it was rented, then the plaintiff could have had nothing but her reversion alone, on which to found her right of recovery, and consequently the jury must have understood the charge as authorizing them to find in her favor, on that ground ; and we are the more apprehensive that such might have been the situation of the case, from the fact that no claim of a concurrent possession in the plaintiff, or, indeed, of any possession in her during the time the land was rented, appears to have been made on the trial. Besides, in the elaborate brief of one of the learned counsel for the defendants, the case, on this point, is put and rested here upon the sole ground of the right of a reversioner to recover for an injury to his reversionary right, and the difficulty, arising from the form of the action, does not seem to have occurred to him. On this point, then, we think that there ought to be a new trial.

Another point is made, by the defendants' counsel, which may be important on another trial, and therefore ought to be determined. The defendants purchased their water privilege, including their dam, with what are called flash-boards upon it, which are used for the purpose of raising the water to a

greater height than the dam itself would, without them, raise it, and they have been in the habit of using these flash-boards, or others of the same description, for this purpose. They claimed, on the trial, that they had never been notified that the flash-boards were too high, or that they, or their grantors, had no right to use them to raise the water to the height to which they did in fact raise it, and that, until such notice, they could not be sued, even if their grantors had no right to use them, and therefore conveyed no such right to the defendants. The plaintiff admitted the law to be, that one who purchases a dam, and only continues to use it as it was when purchased, and had been accustomed to be used by the grantor, is not liable to be sued, without first being notified that such use is an encroachment upon the rights of others. But she claimed, that as the flash-boards were put upon the dam, from time to time, every year, and renewed as often as they were carried away by water or ice, or were removed by the defendants in order to save them, that they were liable for such renewing and replacing them, unless the defendants had acquired the right thus to renew them. The defendants claimed, and requested the court to charge the jury, that as the new or renewed flash-boards were of no greater height than the old ones, they were not liable for renewing them as often as they were carried off by freshets. The court charged the jury that the defendants, if they had no right to keep the dam with flash-boards as high as it was kept with them, when the acts complained of were done, and the flash-boards so renewed from year to year caused the injury, the defendants were liable for their own positive acts, without previous notice, since they were not justified by the like positive, but unlawful, acts of their grantors.

The defendants insist that this ruling was inconsistent with the law, as it was admitted to be ; that one purchasing a dam may lawfully use it as it was when purchased, until he has notice to remove it, or not so to use it, and as the

law has always been held to be since *Penruddock's* case, 5 Rep., 101.

The claim of the defendants, upon this point, is obviously founded upon the assumption that the flash-boards are, in fact and in law, a part of the dam itself. And on this assumption we do not see why the conclusion to which they arrive does not follow; because the right to use and maintain a dam must necessarily carry with it the right to repair, when it becomes defective, and if the flash-boards are but a part of the dam, it would seem that the grantee, without notice that the dam causes an injury which the party has no right to cause, might lawfully replace them if they become defective, or are carried away by accident. But, on the other hand, the court treated the flash-boards, as separate and distinct from the dam, and not constituting any part of it. And assuming this to be so, the ruling was obviously correct.

We are rather inclined to think, that the proper course for the court to have taken was to submit the question to the jury, for them to find whether the flash-boards were, or were not, a part of the dam, or an appurtenance to it, telling the jury that if they found them to be a part of the dam, then the defendants could not be sued for maintaining them, in the condition they were when purchased, without previous notice that they had no right to use them. But if they found them to be no part of the dam, and only placed upon it for occasional use, as the state of the water might make them convenient or necessary, then the raising the water by means of them to a greater height than they had a lawful right to raise it, to the injury of the plaintiff, would render the defendants liable without any such previous notice, although they originally purchased the dam with flash-boards upon it.

For these reasons, we advise the superior court to grant a new trial of the cause.

In this opinion, the other judges, WAITE and STORRS, concurred.