———— o◆o ————

| 34 | 529 |
| 67 | 106 |
| 34 | 529 |
| 69 | 511 |

## THE OCCUM COMPANY *vs.* THE A. & W. SPRAGUE MANUFACTURING COMPANY.

The plaintiffs sued the defendants for setting back water by their dam upon land held by the plaintiffs under a lease from *W* and *E*, who owned the land at the time the lease was given as tenants in common. The defendants offered in evidence a contract with their grantor, executed by *W* alone, prior to the lease to the plaintiffs, and which was known to the plaintiffs when they took their lease, by which he assented to the flowing of the land and agreed to give a deed of the same upon request. The contract was not acknowledged or recorded. Held that it was admissible for the purpose of showing a license, to the extent of *W.'s* interest, to erect and maintain the dam.

The dam was erected by the grantor of the defendants. Held that if the defendants had only maintained the dam as they found it, the action could not be maintained against them until notice had been given them that the plaintiffs claimed that the dam was unlawfully kept up.

Where the plaintiffs' lessor lived only three miles from the dam and passed it frequently, and from the time of its erection in 1856 to the time of the lease to the plaintiffs in 1865 made no objection to the flowing of his land, it was held that the facts should have gone to the jury as evidence upon the question of a license, and that the court erred in saying to the jury that there was not sufficient evidence of a license in the facts to make it necessary for the court to charge them as to the law on the subject.

A judge ought not to withdraw from the jury any question of fact on the ground that he is of opinion that the evidence is not sufficient.

A corporation chartered for a specific purpose has no power to take a lease of property not needed for that purpose, or of no substantial use for it, with the intention and for the purpose of harrassing another party by the use, under the forms of law, of the supposed rights thus obtained.

Where a party has a legal right his motive in asserting that right is immaterial; but where a corporation obtains the title to property for the sole purpose of making a malicious use of it, the motive becomes material as affecting the question of power.

CASE, for an injury to a mill and a mill-site of the plaintiffs by the flowing of the same by the defendants, owners of a lower dam and mill; brought to the superior court in New London county, and tried to the jury on the general issue before *Park*, J.

The parties were both corporations. The plaintiffs claimed title under a lease for twenty years from Ebenezer Waldo and Elizabeth Waldo, dated Dec. 9, 1865. The defendants offered in evidence a written contract made by Ebenezer Waldo, dated Aug. 15, 1856, with William Sprague, Sen., from whom they derived their title to their mill and mill-privilege, by which he agreed, at the request of Sprague, to execute a warranty deed to him and his heirs and assigns of all the water rights which he possessed on the Shetucket river, (the river in question,) with the right to flow so much of his land on the river as might be flowed by the erection of a dam by Sprague of any convenient height, which height might be increased at any future time, with a provision for a determination by arbitrators of the amount to be paid him by Sprague for the land so flowed. The admission of this contract was

objected to, and when the defendants' counsel stated that they offered it for all purposes for which it was legally admissible, it was insisted that the specific grounds on which it was claimed to be evidence must be stated. The defendants' counsel then stated that they offered it to affect the question of damages in the case, to show the character of the possession, and to show a license to the defendants' grantor, stating that they proposed to connect with it proof that the plaintiffs had knowledge of its existence at the time when they took their lease from Ebenezer Waldo and Elizabeth Waldo, on the 9th of December, 1865. The plaintiffs insisted that it was not admissible in evidence, and the court sustained the objection and excluded the evidence.

The defendants further claimed that the facts, that Ebenezer Waldo lived at the distance of about three miles above their dam, that it was directly on the road from his dwelling house to Norwich, and that from the time of its erection down to the time of his death[*] there was no evidence that he made any complaint or claim for damages to those who maintained it, were facts from which a license to erect the dam might be inferred, and that these facts might be considered by the jury, and weighed by them as they should think just. The court instructed the jury that such considerations alone, without showing that Waldo knew how high the dam was intended to be erected, or that he knew that the dam when erected would flow the water upon his premises, situated two miles above the dam, (it being admitted that the premises in question were that distance above the dam,) did not furnish evidence enough of a license to require the court to state the law to the jury upon the subject of a license.                    γ

The defendants further offered evidence to prove, and claimed that they had proved, that the mill and works occupied by the plaintiffs, and which they claimed had been injured by the dam of the defendants, were of a trifling and frivolous character, so situated as to be, and in fact were, abso-

---

[*] It did not appear when he died, but it was of course after Dec. 9, 1865, as the lease to the plaintiffs was executed by him at that date.

lutely worthless for manufacturing or mechanical purposes, or for any business connected therewith, and that the same were procured and the lease obtained by the plaintiffs for the express purpose, and only for the purpose, of commencing a suit against the defendants, and harrassing them under the forms of law; and the defendants prayed the court to instruct the jury that such proceedings were not warranted by the plaintiffs' charter, and that if the jury should find such facts proved the plaintiffs could not recover. The court omitted so to charge the jury, and gave no instruction to them on the question.

It appeared in evidence and was not denied by the plaintiffs that the dam of the defendants and the works connected with it were commenced by William Sprague, Sen., and his partners in business, and that the same were proceeded with under his direction till the time of his death, which took place in the month of October, 1856, that for a few months the prosecution of the work was then suspended, but soon recommenced, and that the dam was completed in the fall of 1857, and that it had ever since been kept up. It was proved and admitted that flash-boards had been used on the dam, from time to time, when the low stage of the water in the river required an additional head to operate the defendants' mill advantageously, from the time of the completion of the same to the present time, and that these varied in width at different times, when put on, the widest being twenty-inches, the narrowest seven inches in width—the widest having been used prior to 1862, and none wider than fifteen inches having been used since the present defendants were in possession of the premises. The defendants claimed that the dam, as erected and maintained, did not flow back water upon the plaintiffs' premises, and had done no injury whatever to the same, and they offered evidence in support of this claim; but they further claimed that they first took possession of the dam and works in August, 1865, and that from that time to the present they had never so used the dam as to cause the water to flow back as far as their grantors had done; and they also claimed that no action of this description could be maintained against them on such a state of

facts, without previous notice of injury and request to remove or lower the dam. On these points the defendants prayed the court to instruct the jury as follows :

That the defendants, coming into possession of the dam, erected and used by their grantors, had a right by law to use the same in the same manner and to the same extent as the same had customarily been used by their grantors, until notice of an encroachment or an injury done by such use; that such notice not having been given, no averment thereof being made in the declaration, the plaintiffs must show a use differing from the former use and more injurious to the interests of the plaintiffs; and that, none such being proved or claimed, the plaintiffs must fail to recover, notwithstanding they might show an injury to their premises done by the dam.

The court did not charge as requested, but said to the jury that if they should find that the dam, kept and maintained by the defendants, was no higher during the time covered by the plaintiffs' declaration than it was when the defendants came into possession of it, such notice as claimed by the defendants was necessary, and the plaintiffs could not recover. And the court further instructed the jury, that the question whether the flash-boards were a part of the dam or not, when the defendants came into possession of it, was a question of fact for them to determine from the evidence in the case; that if at that time the flash-boards had previously been placed upon the dam only for occasional use, as the state of the water might make them convenient or necessary, and not as a part of the dam, then they were no part of the dam; otherwise they were a part of the dam, and so the jury should consider them, and notice in that case was necessary as claimed by the defendants.

The jury having returned a verdict for the plaintiffs the defendants moved for a new trial for errors in the rulings and charge of the court.

*Foster*, in support of the motion.

1. The paper signed by Ebenezer Waldo should have been admitted in evidence. It was a legal and valid contract binding him to convey the property on certain terms there-

after, and meantime it was clearly a license to Mr. Sprague to erect and maintain the dam. On the strength of this arrangement the dam was erected, and money to the amount of millions of dollars has been invested. To say that Waldo, in this state of facts, could maintain trespass against Sprague for flowing his land by means of this dam, would shock all our notions of justice and good faith. Admit, for argument's sake, that the rights granted by this paper are revocable, that does not vary the matter; the paper is still admissible in evidence. It cannot be ruled out because it has been revoked till it has first been admitted. The plaintiffs, it is true, are lessees of Waldo and his sister, but lessees with notice of the existence and terms of this paper; this the case finds, for it finds that the defendants offered to prove it. The plaintiffs then must be taken to have assented and agreed to this contract and taken their lease subject to it, or else for the unlawful purpose of defeating the Spragues or their assigns of their right to acquire title to flow the land. On either supposition the plaintiffs can stand on no better ground than their grantor, Waldo, and he could not stand a moment on an objection to the admissibility of this paper.

2. The facts and circumstances which were claimed as going to prove a license to erect the dam were improperly ruled out. It was not held that we might not prove a license, but that the facts and circumstances offered were not sufficient evidence of one. In other words, the court assumed the prerogative of the jury to decide the weight of evidence. *Walter* v. *Post*, 6 Duer, 363.

3. The instruction asked as to the right of the plaintiffs to maintain this action should have been given. Their charter defined their powers, and if, as the defendants claimed, it appeared in evidence that it was the object of the plaintiffs to get possession of this land for the purpose of harrassing the defendants with a law-suit, they could not recover. *N. York Firemen's Ins. Co.* v. *Ely*, 5 Conn., '560; *Goodspeed* v. *East Haddam Bank*, 22 id, 542; *Mechanics' Mut. Sav. Bank* v. *Meriden Agency Co.*, 24 id., 159.

4. The defendants coming into possession of this mill and dam years after they were built, using and occupying the dam as it had been before, at all events placing no greater obstruction in the stream and flowing back no more water than before, cannot be held liable by any party who suffers an injury without previous notice and a demand to reduce the dam. *Penruddock's Case*, 5 Rep., 101 ; *Beswick* v. *Cunden*, Cro. Eliz., 520 ; *Johnson* v. *Lewis*, 13 Conn., 303; *Noyes* v. *Stillman*, 24 id., 15.

*Wait* and *Halsey*, with whom were *Hovey* and *Pratt*, contra.

1. The paper offered in evidence by the defendants was rightly excluded. The plea in this case is the general issue only, and it was not admissible under such plea, as it set up matter in avoidance, and by our statute notice must be given before such matter can be given in evidence. Gen. Statutes, p. 23, sec. 107 ; *Mahaiwe Bank* v. *Douglass*, 31 Conn., 170 ; 1 Swift's Dig., 615.

2. The court was not bound to charge the law on the question of license upon the facts as presented in regard to Ebenezer Waldo's residence near the dam and his silence concerning it. It did not appear that he knew how high the dam was, or that he was cognizant of any fact under any circumstances when he ought to have spoken. The court below was therefore right in saying that these circumstances did not furnish sufficient evidence to require the court to state the law upon the subject of a license.

3. The motive with which the plaintiffs procured a lease of these premises can have no effect upon their legal rights. No matter what purpose they had in view when they entered into the occupancy of the land in question, they had a right to the full enjoyment of it and the right to institute a suit for the infringement of those rights, and the court below properly omitted to instruct the jury that the motives of the plaintiffs would prevent their recovery. *McCune* v. *Norwich City Gas Co.*, 30 Conn., 521 ; *Benjamin* v. *Wheeler*, 8 Gray, 409.

4. In regard to the question of notice, it was properly left as a question to the jury to determine whether the flash-

boards were a part of the dam. As the jury returned a ver-
dict for the plaintiffs they must have found either that the
permanent dam had been raised since the defendants came
into possession, or that the flowing was done by flash-boards
which were not a part of the dam, but simply placed thereon
for occasional use. In either case the charge of the court
below was correct. *Noyes* v. *Stillman*, 24 Conn., 15.

CARPENTER, J. It is apparent from the record in this case
that three general questions, mainly of fact, were raised by
the defendants for the consideration of the jury.

1. Did the defendants' grantors erect the dam complained
of under a license from the lessors of the plaintiffs?

2. Did the defendants merely continue the dam as previ-
ously erected, or did they by means of flash-boards raise the
water higher than it was raised by the former proprietors?

3. Were the plaintiffs in commencing and prosecuting this
suit acting within the scope of their corporate powers?

Under each branch of the case a question of law is raised
for the consideration of this court.

1. The evidence mainly relied on to prove a license was a
paper writing signed by Ebenezer Waldo, who was then a
tenant in common of the premises now held by the plaintiffs,
and one of the plaintiffs' lessors, in which he recited the in-
tention of William Sprague, under whom the defendants
claim, to erect a dam across Shetucket river for manufactur-
ing purposes; and agreed for a consideration therein named,
after the erection of the dam, to convey to Mr. Sprague all
his water rights and water privileges in the premises, for such
sum as should be awarded by referees therein agreed upon.
This instrument was neither acknowledged nor recorded. To
its admission in evidence the plaintiffs objected, and the court
excluded it. Precisely upon what ground the objection was
placed does not appear; but it does appear that the plaintiffs
were particular to insist that the purposes for which it was
offered should be specified; and it was stated by the defend-
ants' counsel that it was offered, among other purposes, for
that of proving a license or permission to the defendants'

grantors. We are led to infer therefore that it was objected to and excluded as not tending to prove a license. It seems to us quite clear that the paper in question not only tended to prove a license, but, uncontradicted and unexplained, was of itself sufficient evidence for that purpose. It was therefore clearly admissible, unless there is something in the peculiar circumstances of the case which rendered it inadmissible.

The fact that it was not executed with all the formalities requisite to convey real estate cannot have that effect. It is not essential to the validity of a license that it should be acknowledged and recorded. It may be by parol, and may be even inferred from conduct. *Johnson* v. *Lewis,* 13 Conn., 303. To what extent, if any, a *bona fide* purchaser without notice would be affected by such a license, is not a question here ; for the defendants offered to prove, in connection with this paper, that the plaintiffs at the time of taking their lease had full knowledge of it, and of the action of the licensees under it. For the purposes of this question, then, we must assume the existence of these facts.

Nor will the fact that the paper was signed by only one of the tenants in common be sufficient to exclude it. Independently of any presumption that might arise from the circumstances of the parties and of the case, that Elizabeth Waldo acquiesced in the action of Ebenezer Waldo, we think the paper authorized Mr. Sprague to build the dam and use such rights and privileges as Ebenezer Waldo had in the premises; whereby he became, in respect to such rights, a tenant in common at least with Elizabeth Waldo. Precisely what rights tenants in common have as against each other, and what is the remedy for an infringement of those rights, are questions not necessary now to be considered. It is sufficient for the purposes of this case that the defendants, succeeding to the rights of William Sprague, had an interest in the riparian rights of the Waldo property, equal at least to that of the plaintiffs · and if the facts are as the defendants claim them to be, w⸍ lo not see how this action can be maintained.

⸍ut we do not care to pursue this inquiry further. The y ground upon which the plaintiffs now attempt to vindi-

cate. this ruling is, that the pleadings do not raise this issue. If it distinctly appeared that the evidence was rejected in the court below for that reason, it would be worthy of serious consideration whether it was not rightly excluded. But it is obvious from the record and the course of the argument that that was not the ground of the objection. If it had been no one can doubt that the learned counsel for the defendants would at once have removed the objection by amending the pleadings. We are inclined to think therefore that the objection now urged was waived in the court below. If so, substantial justice requires that the defendants should now have an opportunity to make this defense before a jury.

The record presents another question in this part of the case which we will briefly notice. The principal evidence relied on to prove a license had been excluded by the court, as we have just seen. There was however some slight evidence remaining, namely, the fact that Waldo was living within three miles of the dam and knew of its erection, and from that time to the time of his death made no claim for damages or that the dam was illegally erected, which the defendants claimed should go to the jury as tending to prove a license, " to be weighed by them as they should think just." The court told the jury that these facts and circumstances " did not furnish evidence enough of a license to require the court to state the law to the jury upon the subject of a license." The jury must have understood from this that all the evidence on the subject of a license was taken from them by the court, not because it was irrelevant, or inadmissible under the pleadings, but because in the opinion of the court it was insufficient.

As a general rule it is safe for the court to let the jury pass upon the evidence in a cause. This court is not disposed to lend its sanction to the practice of withdrawing from the jury any question of fact, on the ground that the court is of opinion that the evidence is not sufficient. *Morris* v. *Platt*, 32 Conn., 75. It is the province of the jury exclusively to determine the weight of evidence. To this rule we know of no exception prior to the statute of 1852. By that it was pro-

vided that, whenever the plaintiff shall have produced his evidence and rested his case, a nonsuit may be granted if in the opinion of the court the plaintiffs shall have failed to make out a *prima facie* case. We are not disposed to extend the operation of that statute. In all other cases the power of the superior court to return the jury to a second and third consideration, and of this court to grant a new trial for a verdict against evidence, will furnish all the security practicable against verdicts founded upon insufficient evidence. Whether we should grant a new trial upon this point alone, or in any other case where the evidence was manifestly insufficient to sustain the verdict, need not now be determined. Nor is it material to inquire into the sufficiency of this evidence, as the particular question now under consideration can hardly arise in any subsequent trial of this case.

2. The defendants further claimed that they came into possession of the dam described in the declaration by purchase, and that they had a right to use and occupy the same in the same manner and to the same extent as the same had been customarily used and occupied by their grantors, until notice was given them of an encroachment, or of any injury done by such use and occupation; and they asked the court so to charge the jury. The court charged the jury that if they should " find that the dam kept and maintained by the defendants was no higher during the time covered by the plaintiffs' declaration than it was when the defendants came into possession of it, such notice, as claimed by the defendants, was necessary, and the plaintiffs cannot recover." Whether the flash-boards were a part of the dam or not was submitted to the jury as a question of fact. In relation to that the court said, " If at that time the flash-boards had previously been placed upon the dam only for occasional use, as the state of the water might make them convenient or necessary, and not as a part of the dam, then they were no part of the dam; otherwise they were a part of the dam, and so the jury should consider them, and notice in that case was necessary, as the defendants claim." We see nothing objectionable in this part of the case. The charge of the court was in harmony

with the doctrine of *Penruddock's Case*, 5 Rep., 101, as explained and applied by this court in *Noyes* v. *Stillman*, 24 Conn., 15.

3. The motion finds that " the defendants further offered evidence to prove, and claimed that they had proved, that the mill and works described in the plaintiffs' declaration, and which they claimed had been injured by the dam of the defendants, were of a trifling and frivolous character, so situated as to be, and in fact were, absolutely worthless for manufacturing or mechanical purposes, or for any business connected therewith ; and that the same were procured and the lease obtained by the plaintiffs for the express purpose, and only for the purpose, of commencing a suit against the defendants and harrassing them under the forms of law. And the defendants prayed the court to instruct the jury that such proceedings were not warranted by the plaintiffs' charter; and that if the jury should find such facts proved, the plaintiffs could not recover. The court omitted so to charge the jury, and gave no instruction to them on the question." The counsel for the plaintiffs contend that the motive with which the plaintiffs leased this property can have no effect upon their legal rights, and that, no matter what purpose they had in view, they had a right to institute a suit for the infringement of those rights. In support of this position they cite *McCune* v. *Norwich City Gas Co.*, 30 Conn., 521, and *Benjamin* v. *Wheeler*, 8 Gray, 409. We have no disposition to question the authority of those cases. They do not seem to us however to meet the question involved here. There is a manifest distinction between the motive with which an act is done and a legal right to do the act itself. This distinction seems to have been overlooked, both by the court below and by the plaintiffs' counsel. They treat it purely as a question of motive, whereas the defendants' claim cuts deeper, and denies the legal right to do the act itself. They deny the plaintiffs' power under their charter to lease the property and erect the mill *for the purpose named;* and consequently the right to maintain an action for an injury to the property. This distinction is clearly recognized in both the cases cited.

In the case of *Mc Cune* v. *Norwich City Gas Co.* the action was brought to recover damages for cutting off the supply of gas. The plaintiff claimed that the defendants did it maliciously and wantonly and with intent to injure him. The court held that the defendants had a legal right to do the act, and that the motive with which it was done was immaterial. The court say: "Where a party has a legal right to do a particular act at pleasure, the motive which induced the doing of the act at the time in question can never affect his legal liability for the act." In *Benjamin* v. *Wheeler* the plaintiff sought to recover damages for an injury occasioned by digging a water course in the highway in front of his land. The defendants justified under authority from the highway surveyor. The plaintiff claimed that the act was done wantonly and for the purpose of injuring him. The court held that the action could not be maintained. Thomas, J., who delivered the opinion of the court says: "Nor was it competent to show that the thing done was done for the purpose of injuring the plaintiff. An act done within the scope of the officer's authority does not become illegal by reason of the motive which may have influenced his mind in doing it." The question before us is, whether the plaintiffs were acting within the scope of their authority. Concede that and the intent is immaterial. But in determining that question the use they intended to make of it, and did in fact make of it, is material. The intentions and purposes of the party in leasing, and erecting a mill, not only qualify and give character to the act, but enter into and become a part of the act itself.

The plaintiffs are a corporation. Their rights and powers are created and limited by their charter. They can do no act unless therein expressly or impliedly authorized. Any act done or attempted to be done not so authorized, will not lay the foundation for a suit in their behalf. *N. York Firemen's Insurance Co.* v. *Ely*, 5 Conn., 560; *Goodspeed* v. *East Haddam Bank*, 22 Conn., 530.

We are not aware of any principle of law that will allow corporations, chartered and organized for specific purposes, to purchase or lease property, having no connection with their

legitimate business, for the sole purpose of commencing and prosecuting a suit, and harrassing another under the forms of law. We think therefore that it was competent for the defendants to show, if the fact was so, that the plaintiffs in these proceedings were acting outside the limits of their corporate powers, and that the omission of the court to submit this question to the jury with proper instructions was erroneous.

A new trial is advised.

In this opinion the other judges concurred; except PARK, J., who having tried the case in the court below did not sit.