2   481
61   187

---

## Adams *against* Pease and another.

THIS was an action of trespass *quare clausum fregit*, alleging, that the plaintiff was lawfully seised and possessed of a certain tract of land, lying in the town of *Suffield*, bounded *North* on the plaintiff's own land in *Connecticut* river, *East* on the centre of the bed of *Connecticut* river, *South* on *John Wright's* land in said river, and *West* on the *West* bank of said river, containing five acres of land covered with the water flowing in said river ; and that the defendants, during the plaintiff's seisin and possession, with force and arms, and against the peace, entered upon said land, and the water covering said land, with fish-boats, seines, &c. and being so entered, did, then and there, with like force, catch and carry away 3000 of the plaintiff's fish, called shad, then being and swimming in said water on said land, and converted the same to their own use, whereby the plaintiff wholly lost said fish.

The owners of land adjoining *Connecticut* river, above the flowing and ebbing of the tide, have an exclusive right of fishery, opposite to their land, to the middle of the river ; and the public have an easement in the river, as a highway, for passing and repassing with every kind of water-craft.

The plaintiff owns a large farm in *Suffield*, bounded *East* on *Connecticut* river. The *locus in quo* lies between the shore

and the centre of the river, against the farm. It is above *Enfield* falls ; and is passable with flat-bottomed boats, carrying from five to thirty tons burden, up and down the river, but not with ships and vessels ; though some vessels, built above, have been floated down. The waters there, and for a considerable distance below, are never affected by the rising and falling of the sea. The river, from its mouth to this place, and far above, is, and always has been, used for the purpose of transportation by water, and is, for that purpose, of great public importance ; the right of such use being common to all the citizens of the state. The trespass complained of, was committed, by drawing a seine over the *locus in quo,* during the preceding fishing season, from the opposite shore, and hauling it back, thereby taking fish.

A case embracing this statement was reserved for the consideration and advice of the nine Judges.

*Sherman* and *Scarborough,* for the plaintiff, contended, that he had an exclusive right of fishery in the *locus in quo.* The law determines whether a fishery in a river is *several* or *common,* by enquiring whether it is *an arm of the sea,* or in other words, whether the *tide flows and ebbs* there. The *sea* belongs to the public ; and a river, so far as the tide flows and ebbs in it, participates of the nature of the sea ; and a fishery there is as common as a fishery in the sea. But when you get where the sea reaches not, the soil, the water, the fishery, is private property. The public may have an easement there,—a right of passage ; a highway ; but nothing more. 2 *Roll. Abr.* 170. *pl.* 14. *Com. Dig. tit.* Prerogative. D. 50. The case of the *Royal Fishery of the Banne, Davies' Rep.*152. 155. (*Dub. ed.* 1762.) *Harg. Law Tracts* 5, 6. Lord *Fitzwalter's* case, 1 *Mod.* 105. *The King* v. *Smith, Doug.* 443, 4. *Palmer* v. *Mulligan,* 3 *Caines* 318. & seq.

*Goddard* and *Edwards,* for the defendants, insisted, that *Connecticut* river, at the place in question, was *navigable ;* and that there could not be a right of several fishery, (without a grant from the public, or a prescription, which the plaintiff did not claim) in a navigable river. *Warren* v. *Matthews,* 6 *Mod.* 78. S. C. 1 *Salk.* 357. *Ward* v. *Creswell, Willes* 268. In *England,* the sea flows and ebbs in rivers about as far as they are navigable ; which accounts for the indiscrim-

inate use of these terms.   But it is not so in the long rivers of this country.   It would be preposterous to say, that the *Mississippi*, above the flowing and ebbing of the tide, may be held and enjoyed as private property.   The supreme court of *Pennsylvania* have decided, upon great deliberation, and in view of all the *English* authorities, that the *Susquehanna*, above  the flowing and ebbing of the  tide, is a public river ; and that the owners of the banks have  no exclusive right of fishery  opposite to their land.   *Carson* v. *Blazer & al.* 2 *Binn.* 475.

The legislature of this state have always  treated *Connecticut* river as public property.   They have regulated the fisheries in it, and the ferries and bridges over it.

SWIFT, Ch. J.   By the common law, in the sea, in navigable rivers,  and  navigable arms  of  the sea,  the  right  of fishing is common to all.   In rivers  not navigable,  the  adjoining proprietors have  the  exclusive right.   Rivers  are considered to be navigable as far as the sea flows and reflows ; and thus far the  common right  of fishing extends.   Above the ebbing and flowing of the tide, the fishery belongs exclusively  to the  adjoining  proprietors ; and  the public have a right or easement in such rivers, as common  highways, for passing and repassing with vessels, boats, or any watercraft.    2 *Roll. Abr.* 107.   *Davies' Rep.* 56. [or 155, 6. *Dub. ed.* 1762.]   A more perfect  system of regulations on this subject could not be devised.   It secures common rights, as far as the  public interest requires ; and furnishes a proper line of demarcation between them and private rights.   As we have adopted the principal part of these regulations, I think we ought to take the whole, and decide, that above tide-water the adjoining proprietors on  rivers have the exclusive right of fishery, and the community a right of passing them, as highways, with every kind of water-craft.

I am of opinion, that the plaintiff is entitled to recover.

HOSMER, J.   " In rivers not navigable," says Lord *Mansfield* in  *Carter & al.* v. *Murcot & al.* 4 *Burr.* 2164. " the proprietors of the land have  the  right of fishery on their respective sides,  and it generally extends *ad filum medium aquæ.*   But in navigable rivers, the proprietors of the land

*Hartford,* June, 1818.

Adams *v.* Pease.

*Hartford,*
*June, 1818.*

Adams
*v.*
Pease.

on each side have it not." These principles of common law have not been controverted, and indeed, are incontrovertible.

The case is reduced to this question merely, whether the river *Connecticut* is a navigable river, where the tide does not ebb and flow ? If the term navigable is construed according to its popular import, every river capable of being sailed upon by a boat, however small or shallow, is embraced by it. Many of the inconsiderable streams which fall into *Connecticut* river, are of this description. The same common law, however, which has established the principle, has furnished a definite explication of the disputed term. Every river, where the sea ebbs and flows, is, by the common law, considered as navigable ; and all rivers not thus distinguished, are not navigable. 2 *Roll.* 170. *pl.* 14. *Royal Fishery of the Banne, Davies' Rep.* 152, 5, 7. *Carter & al.* v. *Murcot & al.* 4 *Burr.* 2162. *The King* v. *Wharton & al.* 12 *Mod.* 510. *Hale de jure maris, Harg. Law Tracts* 5. Lord *Fizwalter's* case, 1 *Mod.* 105.

The distinction between rivers navigable and not navigable, that is, where the sea does, or does not, ebb and flow, is very ancient. *The King* v. *Smith, Doug.* 441. The former are called *arms of the sea,* while the latter pass under the denomination of *private* or *inland rivers.* " That is called an arm of the sea where the tide flows and re-flows, and so far only, as the tide flows and reflows." *Hale de jure maris, cap.* 4. " If a river runs contiguously between the land of two persons, each of them is owner of that part of the river, which is next his land, of common right." *Rex* v. *Wharton & al.* 12 *Mod.* 510.

The detriment, which, it has been argued, the public must derive from this doctrine, is entirely ideal ; and rests on a misconception of the law. All rivers above the flow of the tide, in reference to the use of them, are public, and of consequence, are subservient to the public accommodation. Hence, the fisheries, ferries, bridges, and the internal navigation, are subject to the regulation of government.

The argument, from inconvenience, must be very powerful, to cast a shade on a long established principle. Here I discern no inconvenience. On the other hand, the doctrine of the common law, as I have stated it, promotes the grand ends of civil society, by pursuing that wise and orderly maxim of

assigning to every thing capable of ownership, a legal and determinate owner.

*Hartford,*
June, 1818.

Adams
*v.*
Pease.

The other Judges were of the same opinion.

Judgment to be entered for the plaintiff.