*New-London,*
*July, 1837.*

Miller
*v.*
Scolfield.

12  335|
66  349|

------

## MILLER *against* SCOLFIELD.

In 1777, *A* received a lease of land on a water-course opposite the site of a saw-mill about to be erected, with the privilege, to him and his heirs, of flowing and building the dam over a part of the lessor's land, during the duration of the saw-mill. In 1809, *A* conveyed to his son *B* a tract of land on such water-course, including a pond and the saw-mill connected with it, together with a piece of land below, on which a fulling-mill was afterwards erected. In *May*, 1815, *A* conveyed, with covenants of warranty, to *C*, his heirs and assigns forever, the latter piece, with the fulling-mill thereon, and the appurtenances thereunto belonging, for carrying on the fulling business ; granting also to *C* certain privileges reserved by *A*, to himself and his heirs, in a deed of adjoining land previously sold by *A* to *R* ; granting also to *C* the privilege of supplying himself, for the use of the fulling mill, with water, at all times, from the saw-mill dam, whenever it should be wanted for carrying on his business ; *C* to have ingress and egress through the road laid across the grantor's land to the public highway : *habendum* to *C*, his heirs and assigns forever, to his and their own proper use and behoof. In *June*, 1815, *B* released to *A* his interest in the fulling-mill site, as deeded by *A* to *C*. The water of the saw-mill pond has always been used for the fulling-mill, and is in fact appurtenant thereto, and essential to its enjoyment. The dam of the saw-mill pond becoming leaky, *D*, the heir of *C*, after a fruitless application to *B* to repair it, took stones and earth from the bed of such pond, for this purpose, doing no unnecessary damage. In an action of trespass *quare clausum fregit*, brought by *B* against *D*, for such act, it was held, 1. that the privilege granted to *C* was not a mere personal privilege to him, but extended to his heirs and assigns ; 2. that the release from *B* to *A*, enured to the benefit of *C*, not only as to the land and fulling-mill, but also as to the privilege granted by *A* to *C*; 3. that the lease to *A* in 1777, limiting the privilege therein granted to the duration of the saw-mill, had no effect upon the construction of

*New-London,*
July, 1837.

Miller
*v.*
Scolfield.

*A's* deed to *C;* 4. that *C* having, by the express terms of *A's* deed to him, the privilege of supplying himself with water, was empowered to do those acts which were necessary to obtain a supply; and consequently, the act complained of, was rightfully done.

Though it is not the office of the *habendum* of a deed to enlarge the subject matter of the grant, yet it may enlarge the estate conveyed in the granting part.

THIS was an action of trespass *quare clausum fregit;* tried at *New London, September* term, 1836, before *Bissell,* J.

The land described in the declaration included a piece of land on the *North* side of *Alewife* brook, used as a saw-mill pond. The acts of trespass complained of, were the taking of earth and stones from the bottom and margin of the mill-pond for repairing the dam connected with it. The plaintiff claimed title to the *locus in quo,* by virtue of a deed from his father, *John S. Miller,* dated the 5th of *July,* 1809, including also the property claimed by the defendant. The defendant, as heir at law of *John Scolfield,* claimed title to the dam of a fulling-mill on *Alewife* brook, below the saw-mill dam, by virtue of a deed of warranty from said *John S. Miller* to said *John Scolfield,* dated the 29th of *May,* 1815. The grant was made "unto the said *John Scolfield,* and to his heirs and assigns forever." After describing the land conveyed, which consisted of four acres on *Alewife* brook, connected with the fulling-mill, the deed proceeded thus: "Together with the building and implements and appurtenances thereon and thereunto belonging for carrying on the fulling business; granting also, by these presents, to said *Scolfield,* the same privileges reserved to myself and my heirs, in a deed of land sold to *Alexander Rogers,* bearing date the 30th of *July,* 1795, so far as said privileges appertain to the above described premises of four acres; said privileges having been reserved as aforesaid to myself, &c., in more than ten acres; the aforesaid privileges in my deed aforesaid to said *Rogers* being in the words following, *viz.,* 'Excepting and reserving to myself and to my heirs the whole of said brook [*Alewife* brook] adjoining said land, with the clear, full and absolute right of such part or parts of said land, as may be found necessary, by myself or my heirs, for the purpose of building, erecting and maintaining a mill or mills, dam or dams, on and across said brook; with the full right of passing, at all times, to and from said mill, mills, dam or dams, through any or such part or parts of the above described land,

with team or teams, horse or horses and footman, as may be necessary, either for the purpose of transporting grain or any other materials, either for the building or for the repair or repairs of said mill or mills, dam or dams, or for the purpose of such manufactories as may be carried on or made in such mill or mills; also excepting and reserving such stone or stones and gravel as may be found on said land, that may be wanted or found necessary for the purpose of building said mill or mills, dam or dams;' as by said deed will appear, reference to be had thereto: Giving and granting, also, to said *Scolfield*, by these presents, the privilege of supplying himself, for the use of said mills, with water, at all times, from the saw-mill pond, whenever it is wanted for carrying on his business, provided the same is not unnecessarily used or wasted; said *Scolfield* to have free ingress and egress through the road laid out across or through the grantor's land to the public highway." The *habendum* was in the usual form, *viz.*, " *To have and to hold* the above granted and bargained premises, with the appurtenances thereof, unto him the said *John Scolfield*, his heirs and assigns forever, to his and their own proper use and behoof."

The defendant also gave in evidence a deed of quit-claim from the plaintiff to said *John S. Miller*, dated *June* 23rd, 1815, releasing all such right as the plaintiff had in the "fulling-mill, with the implements thereto belonging, and also four acres of land adjoining said mill, as deeded to *John Scolfield*, by said *John S. Miller*, reference to said deed being had."

The defendant also gave in evidence a lease from *Peter Strickland* to *Jeremiah Miller* and his son, *John S. Miller*, dated the 15th of *December*, 1777, of land on *Alewife* brook, opposite the place where the saw-mill was then about to be erected, " with liberty to the lessees, or either of them, to build their dam as far over the lessor's land as should be necessary to raise a sufficient head of water to carry on the business of the mill; with liberty also to the lessees, their heirs, executors, &c., or either of them, to flow the lessor's land, for the purpose aforesaid, without any let, hindrance or molestation from the lessor, his heirs, executors and administrators, for and during the term and duration of the saw-mill."

The defendant also gave in evidence a deed from *James* and *Amos Strickland*, who claim under *Peter Strickland*, to him the defendant, dated the 27th of *April*, 1826, of certain land bordering on the pond, " with the privilege to the grantee,

*New-London, July, 1837.*

Miller
*v.*
Scolfield.

his heirs and assigns, to flow any other land of the said *Amos* and *James* that it might be convenient or necessary for the grantee, his heirs or assigns, to flow, for the purpose of carrying on any establishment erected by him or them, for which said pond should be used."

The defendant also offered evidence to prove, that at the times of the execution of the deed of *John S. Miller* to *John Scolfield,* and of the plaintiff's deed of quit-claim to *John S. Miller,* and long before and ever since, the water of the saw-mill pond, had been used, when required, for the benefit of the fulling-mill, and was in fact appurtenant thereto, in the same manner in which *John S. Miller* had granted it, by his deed to *John Scolfield;* and that the use of the water of the saw-mill pond was essential to the enjoyment of the fulling-mill.

The defendant further offered evidence to prove, and claimed he had proved, that said dam had become leaky and insufficient to retain the water, as it had previously been retained and used, for the fulling-mill; that thereupon he applied to the plaintiff to repair the dam, but he neglected and refused to do so; and that thereupon the defendant repaired it, taking stones and earth from the bed of the pond, without doing the plaintiff unnecessary damage. No one of the witnesses estimated the damage done to the plaintiff at more than 25 cents.

The plaintiff proved, that about twelve years ago, the saw-mill was suffered to go to decay and was prostrated, and had never been rebuilt. He claimed, that the legal construction of the deed of *John S. Miller* to *John Scolfield* was such, that a privilege for the life of *John Scolfield* only, was thereby conveyed to him, to supply himself with water from the saw-mill pond, for the use of the fulling-mill;—that it was a personal privilege only. He further contended, that the legal construction of the deed from the plaintiff to *John S. Miller* was such, that the privilege of using the water of the saw-mill pond for the purpose aforesaid, was not conveyed thereby. And he further claimed, that although the legal effect of these deeds was such as to convey said privilege to *John Scolfield,* and his heirs and assigns; yet the defendant had no right to enter upon the plaintiff's land and do the acts complained of, for the purpose of repairing the dam. And he prayed the court to charge the jury in conformity to these several claims.

The court did not so charge the jury, but instructed them, 1. that the construction of the deed from *John S. Miller* to *John*

*Scolfield* was such, that the privilege in question was thereby granted to said *Scolfield* and his heirs, and that it was not a mere personal privilege ; 2. that the deed of quit-claim from the plaintiff to *John S. Miller*, enured to the benefit of *John Scolfield*, and confirmed the privilege before granted ; 3. that the grantees were thereby empowered to do all that was necessary to be done, in order to the full enjoyment of the privilege ; and, of course, to enter upon the plaintiff's land, for the purpose of repairing the dam, whenever such repairs were necessary ; but that they were bound to exercise that right in a reasonable manner, doing the plaintiff no unnecessary damage ; and the court left the question whether the defendant had so exercised the right, to the jury.

New-London,
July, 1837,

Miller
v.
Scolfield.

The plaintiff further contended, that said deeds ought to be construed in connection with the lease from *Peter Strickland* to *Jeremiah* and *John S. Miller ;* and that, inasmuch as that lease gave to them the right to continue the dam and pond, only while said saw-mill should stand, and not for any longer period, such deeds did not convey to said *Scolfield* the privilege in question for any longer period than while the saw-mill should stand ; and prayed the court so to charge the jury.

The court did not so charge the jury. The defendant had a verdict ; and the plaintiff moved for a new trial.

*Goddard* and *Cleveland*, jun., in support of the motion, contended, 1. That the deed from *John S. Miller* to *John Scolfield* conveyed to the grantee only a *personal privilege* to supply himself with water from the saw-mill pond, and that the privilege in question did not extend to his heirs or assigns. Two privileges are granted : first, the privilege reserved in the deed to *Alexander Rogers ;* secondly, the privilege of water from the saw-mill pond. The grant of the latter is as follows : " Granting also to said *Scolfield*, by these presents, the privilege of supplying *himself*, for the use of said mills, with water, at all times, from the saw-mill pond, whenever it is wanted for carrying on *his* business," &c. Here are no words of inheritance used ; and none to make the privilege assignable, even during *Scolfield's* life. *Nichols* v. *Gates* & al. 1 *Conn. Rep.* 318.

Further ; it is an established rule in determining what passes by a grant, (if there is any doubt in the construction of the words) to consider the situation of the grantor and the state of

*New-London,*
*July, 1837.*

Miller
*v.*
Scolfield.

the property. *Strong* & al. v. *Benedict* & al. 5 *Conn. Rep.* 210. 219. & seq. *The King* v. *Laindon,* 8 *Term Rep.* 379. Now, in this case, the right of the grantor to maintain a dam at the saw-mill, was limited to the existence of the saw-mill. He could safely grant the privilege for the life of *Scolfield,* because he could maintain the saw-mill for that period; but he could not, surely, intend to make an unlimited grant of what he did not own.

2. That the *habendum* of the deed to *Scolfield* does not extend the grant of the privilege in question to his heirs or assigns. The granted premises are the four acres of land, with the buildings, implements and *appurtenances.* The privilege of taking water from the saw-mill pond forthe business of the fulling mill, is not *appurtenant* to the land. *Manning* v. *Smith,* 6 *Conn. Rep.* 292. It is not, therefore, a part of the premises conveyed.

3. That the quit-claim deed of the plaintiff to *John S. Miller* does not confirm the grant by *John S. Miller,* except as to the four acres of land, the fulling-mill and implements.

4. That if the privilege to use the water of the saw-mill pond was granted to *John Scolfield,* his heirs and assigns, they were not authorized, under that grant, to dig up the soil, and take the property of the plaintiff to repair or rebuild the dam. In *Emans* v. *Turnbull* & al. 2 *Johns. Rep.* 313. 322., it was decided, that liberty of egress and regress gave no right to wood or grass, or to take any thing appurtenant to the soil.

*Isham* and *Strong,* contra, contended, 1. That the grant by *John S. Miller* to *John Scolfield* of the use of the saw-mill pond, was not confined to *Scolfield* alone, but extended to his heirs and assigns.

In the first place, the principal object and subject matter of the grant was the fulling-mill; and this was to *Scolfield and his heirs and assigns.* But the use of the water was essential to the fulling-mill.

Secondly, the privilege derived from the *Rogers* deed appertaining to this mill, is, in the deed of *Miller* to *Scolfield,* described as being to *Miller, his heirs and assigns;* and no part of that could have been designed to be retained by *Miller;* though in *Miller's* deed to *Scolfield,* in the granting part, it is to *Scolfield* only; but this would pass, by virtue of the whole deed, including the *habendum* to *his heirs and assigns.*

New-London,
July, 1837.

Miller
*v.*
Scolfield.

Thirdly, the grant of the right of way to the granted premises, depends upon the same principle. In the granting part, it is to *Miller*, without words of inheritance. Would *Scolfield's* heirs, after his decease, have had no right of way to the land? There would be no *implied* grant of a right of way, from necessity, after his death; for the law would not imply a grant to the heirs, after *Scolfield's* death, if the grant to him was for life only.

Fourthly, the rule that the construction is to be most strongly against the grantor, and so as to give effect to the intent of the parties, confirms the defendant's claim.

2. That the deed of the plaintiff to his father, *John S. Miller*, confirms the deed of his father to *Scolfield*.

First, it was given to *John S. Miller*, after his alienation of all that is embraced in his deed to *Scolfield*. And why? Evidently, to save him from liability under his covenants of warranty. But according to the plaintiff's construction, this would not be accomplished.

Secondly, he conveys the four acres *as deeded by John S. Miller to John Scolfield;* but this was deeded with the right of way and right to water; of course, these were confirmed in *Miller's* grantee holding under his deed of warranty.

BISSELL, J. In this case, a number of questions are presented for consideration, arising upon the charge of the judge on the circuit.

1. The first involves a construction of the deed from *John S. Miller*, the grantor of the plaintiff, to *John Scolfield*, under whom the defendant claims. This deed conveys to *Scolfield, his heirs and assigns forever*, four acres of land, with the building and implements and appurtenances thereon and thereunto belonging, for carrying on the fulling business. Then follows those clauses in the deed, upon which the present question arises; and they are in these words: "Granting also, by these presents, *to said Scolfield*, the same privileges reserved to myself *and my heirs*, in a deed of land sold to *Alexander Rogers*, &c." "Giving and granting also *to said Scolfield*, by these presents, the privilege of supplying himself, for the use of said mills, with water, at all times, from the saw-mill pond, whenever it is wanted for carrying on his business, provided the same is not unnecessarily used or wasted; said *Scolfield* to have free ingress and egress through the road laid out

*New-London,*
July, 1837.

Miller
*v.*
Scolfield.

across or through the grantor's land to the public highway." And then follows the *habendum,* by which the granted premises and the appurtenances were to be held by the said *Scolfield, his heirs and assigns forever, to his and their proper use and behoof.*

It was contended in the court below, and the claim has been repeated here, that the privilege of taking water from the saw-mill pond, is a mere personal privilege to *John Scolfield,* and does not extend to his heirs and assigns. The jury were instructed, that such was not the legal effect of this deed; but that the privilege in question extended to the heirs and assigns of *John Scolfield.*

In determining whether the construction put upon the deed was a correct one, we are to look at the whole instrument, in connection with the object of the parties, and the facts found in the case. It is very apparent, that the principal object and subject matter of the grant, was the fulling-mill; and this was to *Scolfield,* his heirs and assigns. The case finds, that the water of the saw-mill pond had always been used for the benefit of the fulling-mill; and was in fact appurtenant thereto, and essential to its enjoyment. Now, upon this state of facts, can there exist a doubt as to the intention of those parties? Can it be, for a moment, supposed, that *Scolfield* would consent to purchase a fee-simple in the fulling-mill, and yet limit, by his own life, a privilege, without which, no benefit could be derived from his grant? Such a supposition does violence to all probability, and, we think, also, to the plain language of the instrument.

In this deed, reference is had, as we have seen, to the deed from *John S. Miller* to *Alexander Rogers;* and the privileges appertaining to this mill are specified; and they are described as being reserved to *Miller, his heirs and assigns.* Now, it could not have been the design of the parties, that any portion of these privileges should be retained by *Miller;* and yet, in the granting part of the deed, these privileges are conveyed to *Scolfield only;* and in this respect, they stand on the same ground as the right in question.

Again; the right of way to the granted premises depends upon the same principle. This, too, in the granting part, is conveyed to *Scolfield,* without words of inheritance. And can it be gravely contended, that *Scolfield's* heirs would have no right of way to the lands conveyed by this deed? They

clearly would have none, unless derived under the grant; for if that were to *Scolfield* only, the law would imply none after his decease, in favour of his heirs.

Again; as has been already observed, by the *habendum*, the granted premises are to be held, by the grantee, his heirs and assigns forever. And although it be not the office of the *habendum* to enlarge the *subject matter of the grant;* yet the words *" to have and to hold,"* do often enlarge the *estate* conveyed in the granting part of the deed. Indeed, it is not usual, says Judge *Swift,* to limit and define the estate till we come to the words " to have and to hold;" and then it is done, by limiting it to a certain person and his heirs forever, or for life, or for a certain number of years. 1 *Sw. Dig.* 123. *Smith* v. *Manning,* 6 *Conn. Rep.* 289.

We think, for these reasons, that the claim of the plaintiff is unfounded, and that the correct construction was put upon this deed, in the court below.

2. But it is found, that previous to the execution of this deed, the premises had been conveyed to *John S. Miller,* jun., the present plaintiff: and we are, therefore, brought to enquire, What is the effect of his quit-claim deed? It has been urged, that this deed does not confirm the grant of *John S. Miller,* sen., except as to the four acres of land, the fulling-mill and implements. It is difficult to see on what grounds this claim rests: why this deed should enure to *Scolfield's* benefit, as to a part of the granted premises, and not as to the whole. It is to be remarked, that the deed was not to *Scolfield,* but to *John S. Miller,* senr., who had already conveyed, with covenants of warranty. Now, what was the object of this conveyance? It undoubtedly was, to save *John S. Miller,* senr., from his liability on these covenants. There could have been no other object. But these covenants extended as well to the right in question, as to the four acres of land, or any other portion of the granted premises. We are, then, called upon to say, that the intention of the parties was, to save *John S. Miller* from liablility on a part of the covenants contained in his deed, and to leave him liable on the other part. This is not only a forced and unnatural supposition, but it contravenes, as we think, the express stipulations in the instrument. The deed of *John S. Miller,* sen., to *Scolfield,* is referred to; and the premises are conveyed *" as there deeded."* These considerations are entirely conclusive upon this part of the case.

*New-London,*
*July, 1837.*

Miller
*v.*
Scolfield.

3. It is made a point in the motion, and it was urged on the circuit, that the lease of *Peter Strickland* to *Jeremiah* and *John S. Miller*, is to have some effect upon the construction of these deeds; and that, inasmuch as the right of the present grantor to take water from the saw-mill pond, is there limited to the existence of the saw-mill, he cannot be supposed to have conveyed the right for a longer period. It is observable, that in neither of the deeds before us, is there the slightest allusion to this lease; nor is there any connection between them. The claim, then, comes to this,—that the express covenants in a deed may be controuled, by another instrument, to which it does not refer, with which it has no possible connection, and of the existence of which, the grantee may be entirely ignorant. And besides, it should not be forgotten, that the present claim is quite as inconsistent with the construction put upon the deed to *Scolfield*, by the plaintiff himself, as it is with the construction contended for, by the defendant. There is no more probability, upon the supposition now put forward, that *Miller* would have granted the right in question, during the life of *Scolfield*, than that he would have granted it to him and his heirs. It cannot, surely, be necessary to pursue the argument further.

4. The jury were charged, that the defendant had a right to enter upon the plaintiff's land, for the purpose of repairing the dam, whenever such repairs were necessary; but that he was bound to exercise the right in a reasonable manner, doing the plaintiff no unnecessary damage. And whether he had so exercised the right, was submitted as a matter of fact to the jury.

The only remaining question is, whether this part of the charge is sustainable.

The jury having passed upon the matter of fact, the whole question turns upon the existence of the right. And this, again, depends upon a reasonable construction of the grant. By this the grantee had the privilege of supplying himself with water from the saw-mill pond, at all times when it should be necessary for carrying on his business. How then, it may be asked, is he to *supply himself with water*, within the meaning of the grant? That he would have a *right to enter, for the* purpose of taking water from the pond, cannot admit of a doubt. Deny him this, and the grant would be utterly nugatory. And are we to hold, that although he may take the

water from the pond, yet he may not do those acts which are indispensable to retain the water there, in order that it may be taken? Would not this be a narrow construction of the grant, and such an one as the parties never contemplated? The grantee had, by the express terms of the deed, the privilege *of supplying himself* with water, *at all times*, when his business required. We think the fair construction of this language, is, that he was empowered to do all those acts which were necessary to obtain the supply. *Hodgson* v. *Field*, 7 *East*, 613. And this view of the case is confirmed, by the consideration that the very right now in question was reserved in the deed of the grantor to *Alexander Rogers ;* and that all the privileges reserved in that deed are fully enumerated, and conveyed in the deed to *John Scolfield.*

We think, therefore, that the case was rightly decided on the circuit, and do not advise a new trial.

In this opinion the other Judges concurred.

New trial not to be granted.