GIO BATTA OGNIO ET AL. *vs.* ELM FARM MILK COMPANY.

First Judicial District, Hartford, March Term, 1916.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

The right to take such amount of water from a pond or reservoir as will flow through a five-inch pipe—which ordinarily would constitute but a small part of the contents of the pond—does not entitle the grantee to the free and uninterrupted enjoyment of all the water in the pond, nor preclude the owner of the fee from subsequently leasing to another the right to cut and harvest all the ice on the pond and to maintain and repair the dam and banks of the pond for that purpose. The second grantee takes in subordination to the rights of the first, and in drawing down the water of the pond and in repairing a leak in the dam, is bound to act with reasonable care, promptness and skill, so that there may be no unnecessary interruption in the flow of water through the five-inch pipe; otherwise he will be liable in damages to the owner of that easement or right.

Whether there has been a reasonable exercise or not of one's water rights in a given case, is ordinarily a question of fact for the determination of the jury, under appropriate instructions from the court.

Argued March 7th—decided April 19th, 1916.

ACTION to recover damages for wrongfully depriving the plaintiff of the use of the water of a certain pond or reservoir, brought to the Superior Court in Windham County and tried to the jury before *Greene, J.;* verdict and judgment for the defendant, and appeal by the

plaintiffs for alleged errors in the charge of the court to the jury. *No error.*

*Patrick J. Danahey*, for the appellants (plaintiffs).

*Samuel B. Harvey*, for the appellee (defendant).

RORABACK, J. In March, 1908, the plaintiffs purchased from Mariette Rice a farm, upon which they have since lived. In the deed conveying this land the plaintiffs also acquired the right to the use of water from a certain pond. These water rights were described in the deed as follows: "Together with the right to maintain and repair a five inch pipe now existing and laid from a pond or reservoir situated on land, now or late, of George F. Phelps, lying on the other side of said highway and opposite of said described tract, to said described tract, and together with the right to use the water of said pond or reservoir in quantity no greater than said five inch pipe will conduct."

On November 28th, 1908, the defendant, by a lease of that date, acquired from the owner thereof, certain rights in and to the pond of water described above, and in the land surrounding the pond. These rights were described in the lease as follows: "A certain tract of land situated in said town of Windham at Phelp's Crossing (so-called) and abutting on the highway leading from Willimantic to North Windham, containing a pond of water and consisting of said pond together with a strip of land surrounding said pond thirty feet in width measured from highwater mark, for the sole purpose however of cutting, harvesting and carrying away upon and from said leased premises all ice forming upon said pond as can be cut for use; together with a right of way to said leased premises over other land of lessor and from said highway for the pur-

poses aforesaid; together with the right and privilege to increase in height, repair and maintain the dam and banks confining said waters, at its and their own cost and option."

The plaintiffs, from March, 1908, to September, 1914, except on two occasions, enjoyed the uninterrupted use of the water from the pond. In 1908 a new dam was erected by the defendant. In 1909 the defendant repaired the dam at the outlet of the lake. Upon these occasions the plaintiffs consented to the withdrawal of the water from the pond by the defendant. These facts were conceded.

It is alleged, and the plaintiffs offered evidence to prove, that on September 14th, 1914, the defendant, without the consent of the plaintiffs, for the purpose of repairing the dam, drew off the water from the pond; that as a result of so emptying the pond, the plaintiffs were interrupted in the use and deprived of the enjoyment of the water from the pond and sustained damages thereby. The defendant, in its answer, averred, and also offered evidence to show, that in November, 1908, it acquired the right, by lease from the owner in fee of the pond and the land surrounding the same, to the possession and occupancy of the dam, pond, and the land surrounding it; that, by virtue of this lease, it had the right, among other things, to harvest the ice on the pond, and also had the right to maintain and repair the dam confining the waters of the pond. The defendant also claimed to have shown that on or about September 14th, 1914, for some cause unknown, a leak occurred in the dam; that this leak was so increased in size that it would have completely drawn the water from the pond within a period of twenty-four hours; that on September 14th, 1914, solely for the purpose of preventing the escape of the water from the pond, it commenced work on the dam, and that on Septem-

ber 18th, 1914, this work was fully completed and the dam repaired. The defendant also offered evidence to show that these repairs were necessary and had to be made to retain any water in the pond, and that the plaintiffs and the defendant would have both been deprived of water from the pond if these repairs had not been made. Evidence was also produced by the defendant to show that these repairs were made as speedily and with such diligence and care as the circumstances surrounding the break in the dam permitted.

The plaintiffs presented the two following requests to charge, neither of which was specifically given: "If you find from the evidence in this case that the defendant, by its agent, servants and employees or either of them, drained off this pond for the purpose of making repairs to the dam, without first having obtained the consent or permission of the plaintiffs or either of them or so reduced or diminished the quantity of water . . . that it deprived the plaintiffs of the use and enjoyment of the water from said pond, your verdict should be for the plaintiffs." The second request reads: "It makes no difference whether the dam was being repaired for the purpose of preserving the pond or not. The defendant is under no legal obligation to repair the dam to preserve the water therein for the use of the plaintiffs. Under the grant by the deed of the use of the water from this pond, it does not create an obligation upon the grantor or parties claiming under him . . . to preserve the pond. The plaintiffs are entitled to the free and uninterrupted use and enjoyment of the water from said pond as long as the pond exists, and the defendant has no right to deprive them of the use of it, or interfere with their right to the use of it, and, if it does, it is liable for the damages that result to the plaintiffs." The failure to charge as above requested, and the charge as made, are assigned as reasons of appeal

The plaintiffs grant of their water rights is too clear and complete to justify the construction which they now claim for it, to wit: that they are entitled to the free and uninterrupted enjoyment of all the water from the pond so long as it exists. The only right, which the plaintiffs acquired in their deed, was the right to take all the water that was necessary to fill a five-inch pipe. This was the right that the plaintiffs relied upon in their complaint, and in the trial of the case in the court below. The defendant's rights, enumerated in its lease, gave it a right in the excess of the water in the pond, not taken by the plaintiffs' five-inch pipe. In the same manner the defendant acquired the right to maintain and repair the dam confining the water of the pond. It appears that the defendant's rights to the pond were created after those of the plaintiffs, and that the defendant held them in subordination to the plaintiffs' rights acquired by their deed. In this connection the jury were instructed as follows: "You will remember that the plaintiffs' right to draw water existed six months before the acquisition of the right by the defendant to use the pond and repair the dam for ice purposes. The law, therefore, is so that under their deed the plaintiffs are entitled to draw from the pond as much water as the five-inch pipe will carry; and the plaintiffs' right to this amount of water is superior to any rights whatever of the landowner to the water, or of the defendant. The defendant had no right to any water until the plaintiffs' allowance, what the five-inch pipe would carry, had been satisfied. There was, however, apparently, upon the evidence, in ordinary times very much more water than the plaintiffs' pipe would carry away, and this excess of water belonged to the defendant to use for ice purposes. The defendant, therefore, had an interest in the water, and an interest in the dam as a means of preserving the water. For this reason the

defendant had a right to repair the dam to prevent the escape of the water."

In this there is no error. The controlling question presented in the case was whether or not the defendant had the right to repair the dam as it did, for the purpose of retaining the water in the pond. The judge who presided at the trial left the question, upon this branch of the case, to the jury to determine it as a question of fact, whether these repairs were necessary, reasonable and properly made. In commenting upon this subject the court said: "If you find that there was no necessity to let the water out to mend the crack, or that there was lack of skill or speed in mending the crack, and that in either or both ways the defendant deprived the plaintiffs of their water without necessity, then the defendant is liable in damages for the injury caused by wrongfully depriving the plaintiffs of their water." The jury were also instructed: "If you find that the defendant's claim and testimony is true, and that practically all the water was about to escape from the dam by a leak for which the defendant was not responsible, so that the pond would have been practically emptied and of no use to either party, then the defendant had a right to repair, and, if necessary to a proper repair, a right to let the water out, using ordinary, reasonable care and diligence to do its repair work with skill and promptness. If it caused no more interruption of the plaintiffs' use of the water than was reasonably necessary for the repair of the dam, it is not liable in damages to the plaintiffs for such interruption."

In this there was no error. The reasonableness of the use or detention of water by one entitled to the enjoyment of it, with others, depending as it does upon the circumstances of each case, is a question of fact, which in this case was properly left to the jury. *Mason* v. *Hoyle*, 56 Conn. 255, 262–264, 14 Atl. 786; *Water*

*Commissioners* v. *Perry,* 69 Conn. 461, 467, 37 Atl. 1059; *Hazard Powder Co.* v. *Somersville Mfg. Co.,* 78 Conn. 171, 177, 61 Atl. 519.

There is no error.

In this opinion the other judges concurred.