## Faith N. Gager *v.* Arthur Carlson

Daly, C. J., Baldwin, King, Murphy and Mellitz, Js.

Argued February 4—decided March 31, 1959

*Charles V. James,* for the appellant (plaintiff).

*Paul J. Driscoll,* for the appellee (defendant).

KING, J. An essential of a complaint under our statute for quieting title (Rev. 1958, § 47-31) is a statement of the plaintiff's ownership of the land described or of an interest in it, and of his title thereto. *Gaul* v. *Baker,* 105 Conn. 80, 84, 134 A. 250; *Foote* v. *Brown,* 78 Conn. 369, 377, 62 A. 667. In addition, the plaintiff must allege and prove that his title or interest is in controversy, that is, that it is so affected by claims of the defendant as to justify the litigation. *Foote* v. *Brown,* supra; *Roberts* v. *Merwin,* 80 Conn. 347, 350, 68 A. 377. The present controversy, as far as the complaint is concerned, involves the defendant's rights to the use of the

waters of a pond in the town of Franklin for boating, swimming and fishing. The finding of the court that the plaintiff failed to prove what, if any, particular area or areas of the pond lie over land in which she owns any interest cannot be changed. There was no error in the entry of judgment for the defendant on the complaint.

In a counterclaim, the defendant sought injunctive relief, under the rule of cases such as *Waterbury Trust Co.* v. *G. L. D. Realty Co.,* 121 Conn. 50, 53, 182 A. 466, and *Catania* v. *Vanacore,* 136 Conn. 244, 248, 70 A.2d 136, against interference by the plaintiff with his use and enjoyment of the pond for boating, swimming or fishing, and also against interference with his entering on property of the plaintiff to repair a break in the bank of the pond which had allowed the level of the water so to fall as to render the pond nearly useless. The court found that the defendant failed to prove that he was entitled to money damages; it did, however, grant injunctive relief. Of course, under the counterclaim the burden of proof rested on the defendant as to each essential element of his cause of action.

For convenience, the two basic claims of the defendant will be considered in inverse order. He is the successor in ownership of a sawmill which, on and before December 17, 1897, was owned by Frank A. Rockwood. The sawmill was then operated by water power from a pond which is included in what is now known as Carlson's pond. The boundaries and area of the original pond are not established. Nor does it clearly appear whether any of the land flooded by the original pond was owned by Rockwood, or any part of it was subject to a flowage easement in his favor, or if that was the case, what

the scope and nature of the easement was. On December 17, 1897, Maranda R. Gager, the plaintiff's predecessor in title, for herself and her heirs, by quitclaim deed, conveyed to Rockwood, his heirs and assigns forever, the right to raise the existing dam, which in part at least was on land owned by him, an additional five feet and to flow the grantor's property to that extent.[1] A similar grant of flowage rights was afterwards acquired by Rockwood from Clayton H. and Estella J. Lathrop, also owners of land which was flooded by the pond, at least as it was enlarged by the increase in the height of the dam. Whatever may have been the case with the original pond, after its enlargement by raising the height of the dam, some of the land overflowed was not owned outright by Rockwood, and land other than that of the plaintiff's predecessor in title was overflowed in Rockwood's exercise of flowage rights.

---

[1] The granting portion of this conveyance reads as follows: ". . . the right to build, erect and maintain said Grantee's present dam used by him at the Saw Mill pond in said Franklin, to an elevation of five feet above its present height, and in so doing to flow such of my premises as the water at that height will flow. Said grantee agreeing as a part of the consideration therefor to forever maintain a suitable means of crossing over the new water way as it will be when said dam is raised and changed. [At this point words are stricken out of the deed, which contains a marginal note reading "All erasures made before signing." The stricken wording was, "And should the mill and privilege ever be abandoned, then said Grantor her heirs and assigns shall have the right to lower said dam to its present height."] This deed conveys the full right to flow said land to the full extent that a raise of the dam of five feet above its present elevation or original high water mark would flow the said premises as well as what is now flowed by the dam at its present elevation. This deed also conveys to said grantee the full right to erect and maintain the dam now existing in part on said premises—and to go on said premises at all times to repair or in any way fix or work on said dam. Meaning hereby to convey full privilege and right to flow said lands as aforesaid and maintain and repair said dam as aforesaid." The habendum referred to "the above flowage right."

It is a basic claim of the plaintiff that the words "said premises," as used in connection with the right of entry granted by Maranda R. Gager in her quit-claim deed to Rockwood, refer only to the portion of her premises over which the easement of flowage was given and that the defendant has no other right of entry, express or implied. We are not concerned, under the counterclaim, with the defendant's right to enter on the plaintiff's premises "to repair or in any way fix or work on said dam." It is not the dam itself, but some portion of the embankment of the pond, as enlarged by the increase in the height of the dam, which has given way and which the defendant wishes to repair. The defendant's right, if any, to enter upon the plaintiff's land for this purpose does not stem from any express language in the quit-claim deed, since there is no such language, but arises by implication from the grant of the flowage right. See *Myers* v. *Dunn,* 49 Conn. 71, 76.

The defendant's right of flowage is an easement. *Great Hill Lake, Inc.* v. *Caswell,* 126 Conn. 364, 367, 11 A.2d 396. The easement clearly is appurtenant to the land which the defendant owns and on which the dam, in part at least, stands. It is of course true that the plaintiff is under no duty to make repairs or improvements necessary for the reasonable enjoyment by the defendant of his easement. *Howard* v. *Wiehl,* 144 Conn. 538, 540, 135 A.2d 360. But where an easement is conveyed, what is necessary for the enjoyment of the easement and without which it would be useless passes by implication. *Randall* v. *Latham,* 36 Conn. 48, 53; *Great Hill Lake, Inc.* v. *Caswell,* supra. The language in *Whittelsey* v. *Porter,* 82 Conn. 95, 101, 72 A. 593, may be paraphrased to apply to the present situation, as follows: The law will imply a grant, if within the

grantor's power, of such rights and privileges connected with the flowage rights conveyed as are reasonably necessary to the enjoyment of them for the purposes for which they were conveyed. Angell, Watercourses (7th Ed.) § 158, p. 279. This is true even though in Connecticut, in order to insure safe reliance on the land records, implied grants of any interest in land are allowed to a very much more limited extent than in many other states. *Whiting* v. *Gaylord,* 66 Conn. 337, 349, 34 A. 85; *Hawley* v. *McCabe,* 117 Conn. 558, 564, 169 A. 192; *Rischall* v. *Bauchmann,* 132 Conn. 637, 642, 46 A.2d 898. The right to flood the plaintiff's land would be useless if the defendant did not have the right to make such repairs to the bank of the pond as are reasonably necessary to keep up the level of the water and thereby secure to himself the benefit and enjoyment of the rights granted by the easement. Indeed, he might be liable in damages to the plaintiff if through his negligent failure to keep the bank of the pond in repair other land of the plaintiff, not subject to the easement of flowage, was flooded or damaged. *Schwab* v. *Charles Parker Co.,* 55 Conn. 370, 372, 11 A. 183.

The court found that it was necessary to repair the breach in the bank of the pond in order to maintain the level of the water at the height authorized by the grant of the easement and that the breach occurred on land of the plaintiff. If it is reasonably necessary, and not merely convenient, for the defendant to enter on land owned by the plaintiff in order to repair the break in the bank, then since such repairs are necessary for his enjoyment of his easement of flowage, he has the right so to do. He must, however, exercise reasonable care, skill and diligence in the repair of the bank and use reason-

able care to work no unnecessary injury to the plaintiff's land. *Miller* v. *Scolfield,* 12 Conn. 335, 344; see *Chapman* v. *Thames Mfg. Co.,* 13 Conn. 269, 273; *Noyes* v. *Stillman,* 24 Conn. 15, 27; *Ognio* v. *Elm Farm Milk Co.,* 90 Conn. 393, 398, 97 A. 308.

While the injunction should have been limited in accordance with the above rule, the plaintiff does not assign this defect as error but claims that the defendant has no right of entry on any portion of her land except that which is subject to the easement and that this right of entry is only to permit the repair or maintenance of the dam itself. Apparently, the breach in the bank did not occur on land subject to the easement but on adjoining land owned by the plaintiff. The defendant, under the facts, has an implied right of entry to repair the bank, and the court was not in error in enjoining interference with it. Of course, the injunction would not authorize, nor protect the defendant in, an abuse of any right of entry, express or implied. *Miller* v. *Scolfield,* supra.

The other basic claim of the plaintiff is directed against the part of the judgment on the counterclaim enjoining her from interfering with the defendant's use of the water of the pond for boating, swimming or fishing. In *Great Hill Lake, Inc.* v. *Caswell,* 126 Conn. 364, 367, 11 A.2d 396, ownership of a flowage easement was held to give no exclusive right to recreational uses of the ponded water, including boating, swimming and fishing, as against the owners of the submerged land. *Holyoke Co.* v. *Lyman,* 82 U.S. (15 Wall.) 500, 506, 21 L. Ed. 133. In the instant case, the court held that the defendant owned at least a flowage easement with regard to the entire pond and that this gave him "ownership" of the water, which in turn gave him a right to use

the pond for boating, swimming or fishing, under the court's interpretation of the holding in *Turner* v. *Hebron,* 61 Conn. 175, 188, 22 A. 951. The facts of that case were peculiar. It did not hold that one who owns merely an easement of flowage has exclusive rights in the water as against the owners of the soil under the pond. The case is explained in *Great Hill Lake, Inc.* v. *Caswell,* supra, 368. Even as to the water flowing over any land which the defendant owns outright, his rights are riparian and usufructuary in nature. They are protected against injury. *Parker* v. *Griswold,* 17 Conn. 288, 301; *Harding* v. *Stamford Water Co.,* 41 Conn. 87, 92. But they do not constitute "ownership" of the water in the accepted sense of the word. *DeWitt* v. *Bissell,* 77 Conn. 530, 534, 60 A. 113; *Agawam Canal Co.* v. *Edwards,* 36 Conn. 476, 497; *Akron Canal & Hydraulic Co.* v. *Fontaine,* 72 Ohio App. 93, 99, 50 N.E.2d 897. A flowage easement, in its most limited sense, merely authorizes the flooding, by an owner of a riparian dominant tenement, of land of the servient tenement which he does not himself own and therefore would otherwise have no right to overflow. *Noyes* v. *Stillman,* 24 Conn. 15, 27. It gives no "ownership," as such, in the water over the servient tenement.

This controversy is solely between the owner of land subject to an easement of flowage and the owner of the easement. It is not a controversy between different owners of land, or interests therein, all lying beneath the waters of a pond. See *Baker* v. *Normanoch Assn., Inc.,* 25 N.J. 407, 418, 136 A.2d 645. This pond was at least in part artificially created by the erection of a dam. The stream was nonnavigable. Some of the pond overflowed lands in which the defendant's interest was only as owner of an easement of flowage. As to any flowed land

which he owns absolutely, he may well have exclusive rights of boating, swimming and fishing. See note, 57 A.L.R.2d 569, 587; *Baker* v. *Normanoch Assn., Inc.,* supra; *Holyoke Co.* v. *Lyman,* supra; *Adams* v. *Pease,* 2 Conn. 481, 483. But the owner of land subject to an easement of flowage has, as against the owner of the easement, all the rights of ownership, including the rights of boating, swimming and fishing, except those expressly or impliedly necessary or incident to the enjoyment of the easement. *Great Hill Lake, Inc.* v. *Caswell,* supra, 367; 93 C.J.S. 858-859. Thus he has the right to take ice from the pond if in so doing he does not impair the rights of the grantee of the flowage easement. *Mill River Woolen Mfg. Co.* v. *Smith,* 34 Conn. 462, 464; *Howe* v. *Andrews,* 62 Conn. 398, 400, 26 A. 394. Subject to the same limitation, he may wharf out (*Mad River Co.* v. *Pracney,* 100 Conn. 466, 474, 123 A. 918) or fish. See *Adams* v. *Pease,* supra. The defendant, in his brief, makes no claim that he has, as against the plaintiff, an exclusive right of boating, swimming or fishing in the waters of the pond, nor does the injunction interfere with any rights which the plaintiff may have to such uses. *Great Hill Lake, Inc.* v. *Caswell,* supra. It is the plaintiff who is trying to stop the defendant from making this use of the pond.

The defendant proved that he was the absolute owner of the land on which at least part of the dam stood and of other land on which there was a mill. Whether he owned any land under the pond and, if so, its location and boundaries, were not found. But the plaintiff based her claims only on the Maranda R. Gager conveyance previously quoted. Thus the plaintiff's right to interfere with the defendant's use of the pond would extend only to such

areas of the pond as are subject to that easement. The defendant, however, failed to prove the location and boundaries of the land of the plaintiff embraced in the easement. This is not surprising, since the shape and size of the marginal increase in the area of the pond resulting from the raising of the height of the dam would vary in accordance with the topography of the land thus flooded. But it was substantially undisputed that some portions of the enlarged pond submerged land embraced in the easement, and the defendant had to prevail, if at all, on the strength of his own rights, not on the weakness of the plaintiff's. *Mad River Co.* v. *Pracney,* supra.

The defendant's rights to the use, for swimming, fishing and boating, of the areas of the pond which submerge land owned by the plaintiff are only such as the easement gives him. *Great Hill Lake, Inc.* v. *Caswell,* supra. Thus the basic question is whether the easement included merely the right to flood land which the defendant did not own and thus would otherwise have been unable to flood in his exercise of riparian rights, or whether it included the additional rights of boating, swimming and fishing. The easement was acquired by grant and not by prescription. *Hawley* v. *McCabe,* 117 Conn. 558, 560, 169 A. 192; *Birdsey* v. *Kosienski,* 140 Conn. 403, 413, 101 A.2d 274. It was not acquired under the flowage acts (now Rev. 1958, §§ 52-446—52-455), nor is there any language limiting it to the purpose of supplying water power to the sawmill, which is mentioned merely to identify the dam, or to any other mill. Had the crossed-out words remained in the Maranda R. Gager deed, a construction might have been required limiting the easement to a naked right of flowage for power purposes for the sawmill, enduring only so long as the mill remained in use. See

cases such as *Strong* v. *Benedict,* 5 Conn. 210, 219, and *Whittelsey* v. *Porter,* 82 Conn. 95, 103, 72 A. 593. The easement conveyed is in general terms and is unlimited as to time or purpose. No particular use is affirmatively authorized, such, for instance, as the taking of ice from the pond, as in *Southern New England Ice Co.* v. *West Hartford,* 114 Conn. 496, 502, 159 A. 470. Under all the circumstances, and especially in the light of the crossed-out language, the expressed intention of the parties was that the easement should authorize the creation of a pond, as distinguished from the mere flowage of land for some limited purpose such as power. The language of the easement is broad enough to permit any use of the water of the pond which is reasonably connected with the reasonable use of the land to which the easement is appurtenant. This is so even though at the time of the creation of the easement the parties probably contemplated, as the major purpose of the pond, the furnishing of water to the sawmill for power purposes. *Birdsey* v. *Kosienski,* supra; *New Canaan Country School, Inc.* v. *Rayward,* 144 Conn. 637, 641, 136 A.2d 742. This interpretation is fortified by the rule that in the construction of an instrument creating an easement, ambiguous language, in a case of reasonable doubt, will be construed in favor of the grantee rather than in favor of the grantor. *Sweeney* v. *Landers, Frary & Clark,* 80 Conn. 575, 579, 69 A. 566. That is as far as it is necessary for us to go in this case. We need not determine, nor do we, what, if any, rights of boating, swimming or fishing would pass under some other easement of flowage, differently worded or executed under different circumstances. *Peck* v. *Mackowsky,* 85 Conn. 190, 194, 82 A. 199; see cases such as *Akron Canal & Hydraulic Co.* v. *Fontaine,*

72 Ohio App. 93, 101, 50 N.E.2d 897; *Great Hill Lake, Inc.* v. *Caswell,* supra. The court was not in error in concluding that the defendant's use of the water for boating, swimming and fishing was a use from which the plaintiff could not exclude him. *Peck* v. *Mackowsky,* supra.[2]

There is no error.

In this opinion the other judges concurred.

[2] No assignment of error is directed to the breadth of the authority to swim, boat and fish in effect given the defendant in the judgment of injunction. While the counterclaim and oral argument indicated that the defendant had utilized the pond and his adjacent property as a resort, no question as to overburdening or surcharging his easement was raised, either in this respect or otherwise, nor was there any finding upon which such a question could be determined. 28 C.J.S. 785, 788, 797.