[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff is the record owner of a single family dwelling known as 35 Foote Hill Road, located in Northford (the "premises"). The defendants are currently in possession of the premises. The plaintiff brings this summary process action claiming that any right which the defendants had to occupy the premises has terminated and the plaintiff is entitled to possession.
The defendant Falak Chater claims to have an ownership interest in the premises which precludes her eviction. She asserted this claim in a special defense and also filed a counterclaim seeking judgment that she has an ownership interest in the premises. Mrs. Chater alleges that her former husband, Azzat Chater, acquired title to the premises in the name of the plaintiff corporation in order to defraud her of any interest in the premises. She further alleges that at the time the plaintiff corporation acquired title to the premises, she and her then husband "were the true owners of the stock and/or assets of the Plaintiff." Her final allegation is that she and her husband provided the funds which were used to purchase the premises.
The court finds the following facts based on the evidence presented. Falak Chater and Azzat Chater were married in Syria in 1964. Mr. Chater came to the United States first and Mrs. Chater came to this country in 1979. During the course of their marriage they had eight children. (Several of the children are defendants in this action). The Chaters first settled in New York City where they lived in an apartment in a building owned by Mr. Chater's CT Page 6743 brother, Mamoun. Mr. Chater worked for Mamoun Chater in one of Mamoun Chater's restaurants in New York.
In 1983, Mr. and Mrs. Chater moved to the premises with their family after Mr. Chater had entered into a one-year lease for the premises. The lease was dated September 26, 1983, and included an option to purchase. The terms of the lease and option were unusual. Mr. Chater agreed to pay the owner $41,040.32 in rent for one year of occupancy. This rent was to be paid at the rate of $650.00 per week, together with a monthly payment of $603.36. The lease provided that Mr. Chater would be credited with the weekly rental payments against the purchase price if he exercised his option to purchase the premises. In addition, $25,000.00 was paid to the owner for the option to purchase the premises.
By 1983, Azzat Chater was in poor health. Prior to 1983, he worked irregularly at best, but in 1983, Mr. Chater stopped working and slept a lot. Except for a brief period around 1986 when he opened a restaurant, Azzat Chater never worked again.
The plaintiff FAHZ, Inc. was incorporated in March, 1985 at the behest of Mamoun Chater, Azzat Chater's brother. (Originally incorporated as "FHAZ, Inc.," the name of the corporation was later corrected to "FAHZ"). The sole stockholder of the corporation was Mamoun Chater. Because Mamoun Chater lived in New Jersey, the attorney who prepared the incorporation papers recommended that Azzat Chater serve as president and director of the corporation and Falak Chater serve as secretary and director because they were here in Connecticut. Mamoun Chater agreed. He has always considered FAHZ to be his corporation because he owns all the stock, as he does with all his corporations.
On March 28, 1985, FAHZ, Inc. acquired title to the premises by virtue of a warranty deed for the consideration of $122,000.00. The closing statement, which shows the buyer as "Mamoun Chater-FHAZ, Inc.," indicates that the purchaser was given a credit for weekly payments from September 26, 1983, the date of the lease, through March 20, 1985, approximately a week before the closing. The total credit for these payments was $50,700.00. Various other credits were also given against the purchase price with the result that $31,751.00 had to be provided at closing to consummate the purchase. These funds were provided and the deed to FAHZ was delivered and later recorded in the North Branford Land Records. Immediately prior to the recording of the deed, a release of the lease with option to purchase, signed by Azzat Chater, was put of record. This release operated to clear the title to the premises for FAHZ because Azzat Chater and the owner of the premises had recorded a notice of the lease and option in September, 1983, after the lease was executed. CT Page 6744
After FAHZ acquired the premises, Azzat and Falak Chater were permitted to continue to live there. Mamoun Chater testified that it is part of the Arabic tradition for him to take care of his brother and he always assisted Azzat financially, particularly after Azzat's health declined. After the closing Mamoun paid the real estate taxes for the premises and paid many, of not most, of the expenses of operating the house, such as the electric bills and bills for fuel oil. He paid for new carpeting for the house and for plumbing repairs.
In October, 1988, Falak and Azzat Chater separated and in December, 1988, Mrs. Chater brought an action for dissolution of their marriage. Mrs. Chater and the children remained in possession of the premises. After the separation, the plaintiff gave notice to the defendants that their right or privilege to occupy the premises had terminated. Notices to quit were served on March 1, 1989 and August 8, 1989.
The principal factual dispute between the parties is who provided the funds to purchase the premises. The defendant Falak Chater, who alleges in the special defense and counterclaim that she has an ownership interest in the premises because she and Azzat provided the funds to purchase the house, bears the burden of proof on this issue. Gager v. Carlson, 146 Conn. 288, 290
(1959). Mrs. Chater acknowledged in her testimony that the money to purchase the premises, including the $650.00 weekly payments, came from Mamoun Chater. However, she contended that her husband told her that he bought the house with the proceeds of the sale of their home in Syria. In 1984, she went to Syria to clean their home there because her husband wanted to sell it. (Azzat Chater could not return to Syria because he was wanted by Syrian authorities for forgery and drug offenses.) She returned to the United States after the sale accompanied by Mohammed Chater, another brother of Azzat Chater's. She testified that while they were on the airplane, Mohammed Chater showed her the checks from the sale. After they returned home, her husband told Falak Chater that the house was now theirs because they sold the house in Syria. He repeated this to her several times.
Mrs. Chater offered no explanation as to where the checks from Syria were deposited or how the funds were used in the purchase of the house. She does not know how much money was realized from the sale of the house in Syria. She further claimed, in a contention apparently contradictory to her first claim, that although Mamoun Chater made the $650.00 weekly payments under the lease, he did so with funds which Azzat Chater had sent to Mamoun Chater years earlier while Azzat Chater was living in Saudi Arabia and Mamoun Chater was already in the United States. No substantiation of any of these generalized financial claims was offered. CT Page 6745
Mamoun Chater, on the other hand, testified that he has been in the restaurant business for many years and has owned four restaurants. He currently owns two restaurants. When Azzat Chater arrived in this country, according to Mamoun Chater, he had no assets. Mamoun Chater has employed him and assisted him financially since he came to the United States. He did this because Azzat Chater was ill and because of Arabic tradition. He testified that he told his brother to pick a house and Mamoun would purchase it for him. Azzat Chater signed the lease as tenant with Mamoun Chater's agreement after Mamoun consulted with his lawyer.
Mamoun Chater provided the funds to purchase the premises throughout the lease and at the closing. He provided a ledger showing entries for each of the $650.00 weekly payments which he made as well as the $603.38 installment payments. He testified that he also provided the balance of the funds required to consummate the purchase of the premises. He demonstrated his knowledge of the terms of the sale by testifying about prepaying the purchase money mortgage to the seller. Mamoun Chater provided cancelled checks for payments of real estate taxes, electricity and fuel oil. His testimony was corroborated by these written records and by the attorney who represented him and FAHZ at the closing.
Moreover, Mamoun Chater testified, and it was not disputed by the defendants, that he had provided the funds to purchase a home for his other brother, Mohammed Chater, in much the same way. In 1979 or 1980, Mamoun Chater had his attorney form a corporation to purchase a home in Durham for Mohammed Chater and his family. Mamoun owns the stock of this corporation and provided the funds for the purchase.
The court finds that Mamoun Chater provided the funds for the purchase of the premises. His testimony was credible and corroborated by documentation in several key respects, including his ledger and the reference on the 1985 closing statement to the buyer as "Mamoun Chater-FAHZ, Inc." Mrs. Chater's testimony was not substantiated by any written evidence or independent sources. Her claims with respect to an ownership interest in the premises are weak because they are based almost exclusively on what her former husband told her, without corroboration. Her reliance on his verbal assurances, without more, is not sufficient to sustain her burden of proof. The court finds against the defendant on her allegations that she and Azzat Chater were the owners of the stock or assets of the plaintiff at the time when the plaintiff acquired the premises and that she and her husband provided the funds which were used to purchase the premises. CT Page 6746
The defendant's third claim is that her former husband acquired title to the premises in the name of the plaintiff corporation in order to defraud her of any interest in the premises. The only evidence submitted on this point was that although Azzat Chater was the tenant under the lease and personally held the option to purchase the premises, he executed a release of the option prior to title vesting in the plaintiff. These facts are not sufficient, however, to prove fraud, especially when considered together with all the other evidence. The defendant offered no evidence of Azzat Chater's actual intent nor any evidence from which the court can infer his intent. A review of the recorded documents submitted as evidence in this case leads to the inference that Azzat Chater executed the Release of Notice of Lease With Option to Purchase in order to clear the title to the premises because a Notice of Lease With Option to Purchase had been put of record in 1983. Fraud must be proven by evidence which is clear, precise and unequivocal. Puro v. Henry,188 Conn. 301, 308 (1982). The defendant has failed to sustain her burden with respect to her allegation of fraud.
Certain other points raised by the defendant in her brief must be addressed. The defendant claims in her brief that the stock certificate of FAHZ, Inc. issued to Mamoun Chater is defective under Conn. Gen. Stat. 33-345 (b) because it is signed by an assistant secretary of the corporation. The defendant argues that because there was apparently no assistant secretary of the corporation in 1985, the stock certificate is defective, Mamoun Chater is not the sole stockholder of the plaintiff and he did not have the authority to authorize the eviction of the defendants. This technical point, for which the defendant offers no case authority, overlooks all of the remaining evidence of Mamoun Chater's ownership of the stock of the plaintiff. Moreover, the defendant fails to recognize that by January 14, 1989, Mamoun Chater had become the president of the plaintiff and therefore had the authority to authorize this action.
The defendant next claims in her brief that the court should draw an adverse inference from the plaintiff's failure to call Azzat Chater and Mohammed Chater as witnesses. The defendant cites Secondino v. New Haven Gas Co., 147 Conn. 672 (1960). One of the requirements for such an adverse inference, however, is that the witness who was not called is one "who would naturally by produced" by that party, that is, a witness who "could reasonably be expected to have peculiar or superior information material to the case which, if favorable, the party would produce." Id., 675. The defendant has failed to show how Azzat Chater or Mohammed Chater had peculiar information or superior information to that of Mamoun Chater on the issues of who paid for the premises, who caused FAHZ to be incorporated, etc. Mamoun Charter was the most knowledgeable witness on those issues and he testified at length. CT Page 6747 The defendant has failed to show that these witnesses are ones who would naturally be produced by the plaintiff.
The defendant's last claim in her brief is one of "applied" waiver and estoppel. The concepts of implied waiver and estoppel are interchangeable. Latimer Point Management Corporation v. Anderson, 1 Conn. App. 310, 313 (1984). The party claiming implied waiver or estoppel must prove that one party engaged in misleading conduct which resulted in detrimental reliance by the other party. Id.
The defendant claims that by allowing the Chater family to live at the premises without payment, by being silent with respect to its "claimed" ownership interest in the premises and giver Mamoun Chater's testimony that Azzat and Falak Chater could live at the premises as long as they were married, the defendant was misled. This claim is without merit.
The court has no recollection that Mamoun Chater testified as defendant believes he did. Nor did the defendant testify to any allegedly misleading statements made by Mamoun Chater to her. With respect to plaintiff's alleged silence with respect to its "claimed" ownership interest in the premises, there was no evidence that the plaintiff ever misled the defendant. The plaintiff's title to and ownership of the premises was a matter of public record in the Land Records of North Branford. Nothing was hidden from the defendant by the plaintiff. The plaintiff did not mislead the defendant. The defendant may have been misled by her ex-husband, but that does not effect an estoppel against the plaintiff. (The defendant did not purport in her brief to address the second element of estoppel, detrimental reliance).
Judgment of immediate possession is entered on behalf of the plaintiff. Judgment is entered for the plaintiff on the counterclaim.
Vertefeuille, J.